UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELVIN KIMBROUGH,

                                    Plaintiff,

                                                              9:13-CV-0100
v.                                                            (FJS/TWD)

BRIAN FISCHER, ALBERT PRACK,
T. FAUSS, ABATE, J. HAI, MCCARTHY,

                              Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

MELVIN KIMBROUGH, 00-A-2134
Plaintiff pro se
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ERIC T. SCHNEIDERMAN                          TIFFINAY M. RUTNIK, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

       This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr.,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Melvin Kimbrough claims that Defendants violated his constitutional rights when they

punished him for passing Black Nationalist literature to another inmate.  (Dkt. No. 1.)  Currently

pending before the Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of

Civil Procedure 56.  (Dkt. No. 49.)  For the reasons discussed below, I recommend that the Court

deny Plaintiff's motion in part and grant it in part.

## I.  FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges that in July 2003, when he was housed at Upstate Correctional Facility

("Upstate"), he ordered and received a pamphlet titled "Black Nationalism."  (Dkt. No. 1 at 5.[1])

Officials at Upstate allowed him to possess the pamphlet.  *Id.* at 5-6.

In August 2003, Plaintiff was transferred to Auburn Correctional Facility ("Auburn").

(Dkt. No. 1 at 6.)  On June 6, 2010, Plaintiff was informed that he would be transferring to a

medium security facility.  *Id.*  On June 7, 2010, Plaintiff passed "an abundance of papers" to

another inmate to throw away.  *Id.*  These papers included Black Nationalist literature.  *Id.*

Defendant Correction Officer J. Hai intervened and confiscated the papers from the other inmate.

*Id.*

Plaintiff arrived at Mohawk Correctional Facility ("Mohawk") on June 8, 2010, and was

immediately placed in solitary confinement without any explanation.  (Dkt. No. 1 at 6.)  On June

9, 2010, Plaintiff was issued a misbehavior report that charged him with violating Rules 105.13

(Unauthorized Organizations), 105.14 (Unauthorized Organizational Activities), 113.22

(Possessing Prohibited Articles), and 114.10 (Smuggling).  *Id.*

On June 11, 2010, Defendant T. Fauss began the Tier III disciplinary hearing regarding

the June 9, 2010, misbehavior report.  (Dkt. No. 1 at 7.)  He adjourned the hearing to allow

Plaintiff to receive assistance, a rule book, and his personal property from Auburn.  *Id.*  This

---

[1]         Citations to page numbers in the complaint refer to the page numbers assigned by
the Court's electronic filing system.

personal property included Plaintiff's receipts for the allegedly unauthorized materials.  *Id.* at 6.  Plaintiff was provided with an outdated rule book.  *Id.* at 7.  His "efforts to retrieve his receipts for Black Nationalist literature were thwarted by prison officials."  *Id.*

Plaintiff asked his assigned assistant to obtain copies of his disbursement receipts from prison business office records.  (Dkt. No. 1 at 7.)  The assistant was unsuccessful because facility records only went back three years.  *Id.*  He advised Plaintiff to obtain a monthly statement from the central office of the Department of Corrections and Community Supervision's ("DOCCS").  *Id.*

Defendant Fauss restarted the disciplinary hearing on June 14, 2010.  (Dkt. No. 1 at 7.)  Plaintiff pleaded not guilty to all of the charged violations.  *Id.*  Plaintiff moved to dismiss the charges for violating Rules 105.13 and 105.14 because those rules were not listed in the copy of the rule book that had been given to him.  *Id.*  Plaintiff also argued that he should not be charged with violating Rule 105.13 because it pertained to gangs rather than unauthorized organizations.  *Id.*  Plaintiff argued that Defendant Hai had "attempted to enhance the magnitude of [the] alleged violation" by charging Plaintiff with violating both Rule 105.13 and 105.14.  *Id.*  Plaintiff testified that the Black Nationalist literature had been "reviewed, permitted and delivered to him" at Upstate and that it posed no threat to the safety and security of the institution.  *Id.*

The hearing continued on June 15, 2010, with testimony from the inmate to whom Plaintiff handed the materials and from Defendant Hai.  (Dkt. No. 1 at 8.)

Defendant Fauss found Plaintiff guilty of all four rule violations.  (Dkt. No. 1 at 8.)  He imposed sanctions of 120 days' solitary confinement, 120 days' loss of good time credits, and loss of phone, commissary, and package privileges.  *Id.*

Plaintiff alleges that after finding him guilty, Defendant Fauss turned off the tape recorder and said "You know what this is about, Mr. Hai told me about you. That Black Nationalist [b]ullshit is not tolerated!" (Dkt. No. 1 at 8.)

Plaintiff appealed Defendant Fauss' determination. (Dkt. No. 1 at 8.) On July 20, 2010, Defendant Albert Prack, Acting Director of Special Housing/Inmate Disciplinary Program, modified Defendant Fauss' decision by dismissing the Rule 105.13 charge. *Id.* at 8, 25. Defendant Prack affirmed the other sanctions. *Id.* Defendant Prack did not reduce Plaintiff's solitary confinement time, his loss of good time credits, or his loss of privileges. *Id.*

Plaintiff alleges that while he was housed in solitary confinement, he was locked down for twenty-four hours a day in a sixty-foot double bunk cell. (Dkt. No. 1 at 10.) The light was kept on all night. *Id.* He had no privacy, was not allowed to participate in sports or social gatherings, was unable to attend religious services, was not allowed to have contact visits, and received the "bare minimum personal property and food rations." *Id.* Plaintiff was released from solitary confinement on April 21, 2012. *Id.*

Plaintiff filed an Article 78 proceeding in state court challenging his disciplinary conviction. (Dkt. No. 1 at 8.) On June 21, 2012, the appellate division ruled in Plaintiff's favor and ordered DOCCS to expunge the disciplinary conviction, restore all of Plaintiff's privileges, and restore Plaintiff's good time credits. *Kimbrough v. Fischer*, 946 N.Y.S.2d 714 (N.Y. App. Div. 3d Dep't 2012). The court stated that:

> On the record before us, we cannot conclude that substantial evidence supports the determination finding petitioner guilty of possessing unauthorized organizational material. The disciplinary rule at issue provides, in pertinent part, that '[a]n inmate shall not . . . possess printed or handwritten material relating to an unauthorized organization where such material advocates either expressly or by

clear implication, violence based upon race, religion, sex, sexual orientation, creed, law enforcement status or violence or acts of disobedience against department employees or that could facilitate organizational activity within the institution by an unauthorized organization.' Significantly, the documents that petitioner possessed did not refer to any particular organization nor did they advocate violence or acts of disobedience. Further, as no evidence was presented in the misbehavior report, the hearing testimony, or elsewhere in the record to sustain the remaining charges on a basis independent of a finding that the materials petitioner possessed were unauthorized, those charges must also be annulled.

*Id.* at 714-15 (citations omitted).

Plaintiff filed this action on January 28, 2013. (Dkt. No. 1.) The complaint asserts the following causes of action: (1) a First Amendment claim against Defendant Hai for confiscating Plaintiff's papers and issuing the misbehavior report and against Defendant Abate[2] for failing to dismiss the misbehavior report (*id.* at 10-11); (2) a due process claim against Defendant Fauss for his conduct during the disciplinary hearing, against Defendant Prack for affirming the majority of the hearing results, and against Defendant Fischer for failing to reverse the disciplinary decision (*id.* at 11, 13); (3) an equal protection claim against Defendants Hai, McCarthy, and Fauss (*id.* at 12-13); and (4) an Eighth Amendment claim against Defendants Hai, Abate, Fauss, Prack, and Fischer (*id.* at 14-15). Plaintiff requests declaratory and injunctive relief, compensatory damages, and punitive damages. *Id.* at 15-16.

Defendants moved for summary judgment. (Dkt. No. 47.) On September 29, 2014, I issued a Report-Recommendation recommending that the Court grant Defendants' motion in part and dismiss (1) the First Amendment claims against Defendants Hai and Abate; (2) the equal

---

[2]     The complaint does not make any reference to Defendant Abate other than asserting that he had the authority to dismiss the misbehavior report.

protection claims against Defendants Hai, McCarthy, and Fauss; and (3) the Eighth Amendment claims against Defendants Hai, Abate, Fauss, Prack, and Fischer. (Dkt. No. 62 at 30-31.) In light of that recommendation, I recommended that the Clerk terminate Defendants Hai, Abate, McCarthy, and Fischer from the docket. *Id.* at 31. I recommended that the Court deny Defendants' motion for summary judgment as to the due process claim against Defendants Fauss and Prack. *Id.*

Plaintiff moves for summary judgment. (Dkt. No. 49.) Defendants have opposed the motion. (Dkt. Nos. 50.) Plaintiff has filed a reply. (Dkt. No. 53.) Plaintiff's motion was filed before the Report-Recommendation on Defendants' motion was issued, and thus both his papers and Defendants' papers address all of the causes of action in the complaint.

## II.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III.    ANALYSIS

### A.    Moot Claims

Plaintiff moves for summary judgment in his favor on his First Amendment, equal protection, and Eighth Amendment claims.  (Dkt. No. 49-3 at 2-3.[4])  I previously recommended that the Court grant Defendants' motion for summary judgment on those claims. (Dkt. No. 62 at 30-31.)  In light of that recommendation, I recommend that the Court deny Plaintiff's motion for summary judgment on those claims as moot.

### B.    Due Process Claim

Plaintiff alleges that Defendants Fauss and Prack violated his right to procedural due process.[5]  (Dkt. No. 1 at 6-11.)  I previously recommended denying Defendants' motion for summary judgment on this claim.  (Dkt. No. 62 at 17-24.)  Plaintiff moves for summary judgment in his favor on this claim.  (Dkt. No. 49-3 at 16-23.)  Defendants oppose the motion,

---

[3]    A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson*, 477 U.S. at 248.

[4]    References to page numbers in Plaintiff's memorandum of law refer to the page numbers assigned by the Court's electronic filing system.

[5]    The complaint also asserts a due process claim against Defendant Fischer but, as discussed in the earlier Report-Recommendation, summary judgment should be granted for Defendant Fischer because he was not personally involved in the alleged constitutional violation. (Dkt. No. 62 at 16-17.)

relying on the memorandum of law submitted in support of their own motion for summary

judgment. (Dkt. No. 50-1 at 2,[6] incorporating Dkt. No. 47-1 by reference.) For the reasons

discussed below, I recommend that the Court (1) find, as a matter of law, that Defendants Fauss

and Prack violated Plaintiff's right to procedural due process; and (2) direct the parties to file

further briefing regarding the issue of relief.

In order to prove that procedural due process rights were violated, a plaintiff must show

that he was deprived of a cognizable liberty or property interest without due process of law.

*McKithen v. Brown*, 626 F.3d 143, 151 (2d Cir. 2010). An inmate has a liberty interest in

remaining free from a confinement or restraint where the confinement or restraint imposes an

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Defendants concede for the purposes of this motion "that the penalty imposed here, four

months in special housing, implicated a liberty interest." (Dkt. No. 47-1 at 10.) Defendants,

however, "dispute whether plaintiff was deprived of that interest as a result of insufficient

process." *Id.*

Due process is satisfied if an inmate facing disciplinary charges receives (1) advanced

written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to

call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4)

a written statement of the disposition, including the evidence relied upon and the reasons for the

disciplinary actions taken. *Wolff v. McDonnell*, 418 U.S. 539, 559, 563-67 (1974); *Luna v. Pico*,

---

[6] References to page numbers in citations to Defendants' opposition to Plaintiff's motion for summary judgment refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

356 F.3d 481, 487 (2d Cir. 2004).  Here, Plaintiff does not challenge the sufficiency of the written notice he received, allege that he was not given a reasonable opportunity to call witnesses and present evidence, or challenge the sufficiency of the written statement of the disposition. (Dkt. No. 49-3 at 16-23.)  Rather, he argues that Defendant Fauss was not a fair and impartial hearing officer and that Defendant Prack should not have affirmed the hearing decision.  *Id.*

It is well settled "that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." *Espinal v. Goord*, 180 F. Supp. 2d 532, 539 (S.D.N.Y. 2002) (citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)).  Due process in this context requires only that the hearing officer's decision not be "arbitrary." *Wolff*, 418 U.S. at 571.  A decision is not "arbitrary" if it is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  "This standard is extremely tolerant and is satisfied if 'there is *any* evidence in the record that supports' the disciplinary ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (emphasis in original) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).  In contrast to this "extremely tolerant" federal standard, "New York law requires prison disciplinary rulings to be supported by 'sufficiently relevant and probative' information to constitute *substantial* evidence.  This requirement is sterner than the 'some evidence' standard necessary to afford due process." *Sira*, 380 F.3d at 76 n.9 (emphasis added) (internal citations omitted).

Here, there was not "some evidence" that Plaintiff violated Rule 105.13.  That rule states that an inmate:

> shall not engage in or encourage others to engage in gang activities or meetings, or display, wear, possess, distribute or use gang insignia or materials including, but not limited to, printed or handwritten gang or gang related material.  Note: For purposes of this rule, a gang is a

> group of individuals, having a common identifying name, sign, symbol or colors, who have individually or collectively engaged in a pattern of lawlessness (e.g., violence, property destruction, threats of harm, intimidation, extortion, or drug smuggling) in one or more correctional facilities or that are generally recognized as having engaged in a pattern of lawlessness in the community as a whole. For purposes of this rule, printed or handwritten gang or gang related material is written material that, if observed in the inmate's possession, could result in an inference being drawn about the inmate's gang affiliation, but excludes published material that the inmate has obtained through the facility library or that has been approved for the inmate to possess through the media review process.

N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(6)(IV) (2013). There was no evidence presented at the disciplinary hearing that Plaintiff distributed gang materials. Defendant Fauss' guilty finding on this charge was subsequently reversed. (Dkt. No. 1 at 8, 25.) That reversal does not protect Defendant Fauss from liability because it is well established in the Second Circuit that subsequent administrative reversals do not cure procedural defects in disciplinary hearings. *Walker v. Bates*, 23 F.3d 652, 657 (2d Cir. 1994).

There was also not "some evidence" that Plaintiff violated Rule 105.14. That rule states that an inmate:

> shall not engage in or encourage others to engage in unauthorized organizational activities or meetings, or possess printed or handwritten material relating to an unauthorized organization where such material advocates either expressly or by clear implication, violence based upon race, religion, sex, sexual orientation, creed, law enforcement status or violence or acts of disobedience against department employees or that could facilitate organizational activity within the institution by an unauthorized organization . . . . This rule excludes possession of published material that the inmate has obtained through the facility library or that has been approved for the inmate to posses through the media review process.

N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(6)(V) (2013).

The rule clearly states that inmates who possess published material that has been

approved through the media review process cannot be found guilty of violating the rule.  Plaintiff raised this issue at his disciplinary hearing, noting that the publications were from an approved vendor and that "I shouldn't be penalized or punished just by having this."  (Dkt. No. 47-11 at 50.)  As Plaintiff correctly notes (Dkt. No. 49-3 at 19), Defendant Fauss did not dispute that Plaintiff had received permission to possess the publications.  Rather, Defendant Fauss stated that:

> I have had numerous hearings where guys have been . . . charged with having possession of things that they shouldn't have whether it be gang related or things that they purchased . . . and . . . the staff at the facilities do their best to review things and if it is stuff that is not allowed in they stop it.  They don't allow it to come in, but the reality is that they can't review every little thing that comes into the facility, so the responsibility is placed on the person receiving it, the inmate receiving the material.  If you are in possession of something that you are not supposed to have that is on you because that is in your possession and that is the way it is looked at . . . . Just to let you know.

(Dkt. No. 47-11 at 51.)

Defendants argue that Defendant "Fauss correctly explained to [Plaintiff] that it is the responsibility of the inmate to ensure that his possessions ultimately conform with DOCCS rules, not the officials who screen materials coming into the prison."  (Dkt. No. 47-1 at 11-12.) Defendants, however, cite no authority for the proposition that this was a "correct" statement of the rules.  On the record before the Court, in fact, Defendant Fauss' statement directly contradicts the plain language of Rule 105.14.  The undisputed evidence presented to Defendant Fauss showed that Plaintiff had received approval through the media review process to possess the publications.  Pursuant to this evidence, Plaintiff's conduct fell within the exception to the disciplinary rule.  Accordingly, there was no evidence to support Defendant Fauss' guilty finding.

Therefore, I recommend that the Court grant Plaintiff's motion for summary judgment in his favor on the due process claim against Defendant Fauss.

### 2.  Defendant Prack

Plaintiff's due process claim against Defendant Prack is premised on the fact that he affirmed the majority of Defendant Fauss' decision.  (Dkt. No. 1 at 8, 11.)  Defendants appear to argue that this allegation is insufficient to implicate Defendant Prack's personal involvement.  (Dkt. No. 47-1 at 13.)  For the reasons discussed below, I recommend that the Court find that Defendant Prack was personally involved in the constitutional violation.

Defendants correctly note that "[d]istrict courts are split in the Second Circuit on the issue of whether simply affirming an allegedly unconstitutional disciplinary decision will implicate the requisite personal involvement for § 1983 liability."  (Dkt. No. 47-1 at 13 n.3.)  Courts declining to find personal involvement conclude that there is no "ongoing" violation for the supervisory official to "remedy" in such a situation.  *See Jamison v. Fischer*, No. 11 Civ. 4697 (RJS), 2012 U.S. Dist. LEXIS 144307, at *14-15, 2012 WL 4767173, at *5 (S.D.N.Y. Sept. 27, 2012) ("Despite the fact that Plaintiff continued to be housed in the SHU, Bezio's involvement and review of the matter was distinct from whatever took place at the hearing, and he cannot be held liable . . . for violations that occurred at the hearing and were not ongoing.").[7]  *See also Abdur-Raheem v. Selsky*, 598 F. Supp. 2d 367, 370 (W.D.N.Y. 2009); *Chavis v. VonHagn*, No. 02-CV-0119 (SR), 2009 U.S. Dist. LEXIS 6871, at *198-99, 2009 WL 236060, at *68 (W.D.N.Y. Jan. 30, 2009); *Odom v. Calero*, No. 06 Civ. 15527 (LAK) (GWG), 2008 U.S. Dist. LEXIS 52408, at

---

[7]      The Court provided Plaintiff copies of the unpublished decisions cited in this section with his copy of the previous Report-Recommendation in this case.  (Dkt. No. 62 at 33-165.)

*16-20, 2008 WL 2735868, at *6-7 (S.D.N.Y. July 10, 2008); *Ramsey v. Goord*, No. 05-CV-47A, 2005 U.S. Dist. LEXIS 42953, at *18-20, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005).

Other district courts in this circuit have found personal involvement where a supervisory official affirms an allegedly constitutionally infirm hearing decision. *See Thomas v. Calero*, 824 F. Supp. 2d 488, 509-10 (S.D.N.Y. 2011); *Holmes v. Fischer*, 764 F. Supp. 2d 523, 539-40 (W.D.N.Y. 2011); *Rodriguez v. Selsky*, No. 9:07-CV-0432 (LEK/DEP), 2010 U.S. Dist. LEXIS 23811, at *14-20, 2010 WL 980273, at *6 (N.D.N.Y. Mar. 15, 2010[8]); *Baez v. Harris*, No. 9:01-CV-807, 2007 U.S. Dist. LEXIS 8728, at *6, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007); *Johnson v. Coombe*, 156 F. Supp. 2d 273, 278 (S.D.N.Y. 2001). These courts find that there is an "ongoing" violation because having the power to vacate an allegedly unconstitutional decision, refusing to do so, and allowing an inmate to remain in the SHU "knowingly continu[es] a deprivation of liberty without due process of law." *Delgado v. Bezio*, No. 09 Civ. 6899 (LTS), 2011 U.S. Dist. LEXIS 51917, at *27, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011).

I agree with Magistrate Judge David E. Peebles that the cases finding personal involvement in such situations "appear to be both better reasoned and more consistent with the Second Circuit's position regarding personal involvement." *Bennett v. Fischer*, No. 9:09-CV-1236 (FJS/DEP), 2010 U.S. Dist. LEXIS 139587, at *38-39, 2010 WL 5525368, at *12 (N.D.N.Y. Aug. 17, 2010). Therefore, I recommend that the Court find that Defendant Prack

---

[8]     Lexis and Westlaw list different dates for this decision. The Court has used the date listed by Westlaw, which represents the date on which the district court judge adopted the magistrate judge's report-recommendation.

was personally involved in the alleged constitutional violation and grant Plaintiff's motion for summary judgment in his favor on the due process claim against Defendant Prack.

3.    Relief

Having recommended that the Court grant summary judgment in Plaintiff's favor on his due process claims against Defendants Fauss and Prack, the issue of the appropriate relief remains.  Plaintiff seeks declaratory and injunctive relief, compensatory damages, and punitive damages.  (Dkt. No. 1 at 15-16.)  The parties have not addressed the issue of relief.

Plaintiff's ability to recover damages is limited by the Prison Litigation Reform Act ("PLRA").  Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e) (2006).  Prisoners who bring civil actions without a prior showing of physical injury are limited to recovering compensatory damages for actual injury, nominal damages, punitive damages, injunctive relief, and declaratory relief.  *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).  Here, Plaintiff does not allege that he suffered any physical injury as a result of the due process violation.  Thus, his right to recover damages is limited by the PLRA.

Judges in the Northern District of New York have occasionally granted summary judgment for prisoners regarding procedural due process violations and, in the same order, awarded the prisoner nominal damages.  *See, e.g.*, *Hinton v. Prack*, No. 9:12-CV-1844 (LEK/RFT), 2014 U.S. Dist. LEXIS 126955, at *41-45, 2014 WL 4627120, at *16-17 (N.D.N.Y.

Sept. 11, 2014[9]).[10] *Hinton* is distinguishable, however. In that case, the prisoner did not receive a formal written statement of the reasons for his disciplinary conviction until "at least six months after the hearing was actually held." *Hinton*, 2014 WL 4627120, at *15. The Court found that the failure to timely provide the formal written statement violated the prisoner's procedural due process rights. *Id.* at *16. However, the Court also found that the prisoner had not suffered any actual injury from the due process violation because he could not show that the failure to provide the notice hampered his efforts to appeal his disciplinary conviction. *Id.* The Court noted, in particular, that the prisoner's attempts to appeal the disciplinary decision were unsuccessful even after the judge granted him permission to reapply with a copy of the written notice after he received it. *Id.* Thus, the Court concluded, the due process violation neither caused nor lengthened the prisoner's SHU term. *Id.* The prisoner did not seek declaratory or injunctive relief. *Hinton v. Prack*, No. 9:12-CV-1844 (LEK/RFT), Dkt. No. 1.

Here, unlike in *Hinton*, the Court simply does not have enough information to assess damages on the record and briefing before it. Unlike the prisoner in *Hinton*, Plaintiff was, in fact, confined to the SHU as a direct result of the due process violation and thus suffered an actual injury (although that injury was not physical). Plaintiff seeks $200,000 in compensatory damages. (Dkt. No. 1 at 16.) It is not clear whether Plaintiff considers any of that amount to be compensatory damages for his actual injury, such as, *inter alia*, the loss of prison job wages or

---

[9]     Lexis and Westlaw list different dates for this decision. The Court has used the date listed by Westlaw, which represents the date on which the district court judge adopted the magistrate judge's report-recommendation.

[10]     The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

the value of his property.  Moreover, Plaintiff seeks and, if the Court adopts this Report-Recommendation, is entitled to a declaratory judgment that Defendants Fauss and Prack violated his due process rights.  He may also be entitled to injunctive relief.  The injunctive relief he seeks is the "return of all [P]laintiff's material that was confiscated from him" and the reversal and expungement of his disciplinary conviction.  (Dkt. No. 1 at 15.)  It is not clear from the briefing and evidence currently before the Court whether (a) Plaintiff is entitled to the return of materials that, by his own admission, he gave to another inmate in order to place in the trash (*id.* at 6); (b) whether those materials are still in existence; or (c) whether Plaintiff's disciplinary conviction has already been expunged as a result of his Article 78 proceeding.  In short, the Court simply needs more information before it can assess the appropriate relief in this case.  Therefore, if the Court adopts this Report-Recommendation, it is recommended that the parties be allowed an opportunity to brief the issue of the appropriate relief and the best method for determining that relief.

> **ACCORDINGLY**, it is

> **RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 49) be

**<u>GRANTED IN PART AND DENIED IN PART</u>**.  Specifically, it is recommended that Plaintiff's motion for summary judgment of the First Amendment, equal protection, and Eighth Amendment claims be denied as moot and that Plaintiff's motion for summary judgment of the due process claims against Defendants Fauss and Prack be granted;  and it is further

> **RECOMMENDED** that the Court direct the parties to file briefs regarding relief; and it is further

> **ORDERED** that the Clerk provide Plaintiff with a copy of *Hinton v. Prack*, No. 9:12-

CV-1844 (LEK/RFT), 2014 U.S. Dist. LEXIS 126955, at *41-45, 2014 WL 4627120, at *16-17 (N.D.N.Y. Sept. 11, 2014).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: October 21, 2014
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2014 WL 4627120
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Leonard HINTON, Plaintiff,

v.

A. PRACK, et al., Defendants.

No. 9:12–CV–1844 (LEK/RFT). | Signed
Sept. 10, 2014. | Filed Sept. 11, 2014.

**Attorneys and Law Firms**

Leonard Hinton, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State
of New York, Joshua E. Mcmahon, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

### *MEMORANDUM–DECISION and ORDER*

LAWRENCE KAHN, District Judge.

## I. INTRODUCTION

 **\*1** This *pro se* action under 42 U.S.C. § 1983 comes
before the Court following a Report–Recommendation filed
on August 14, 2014, by United States Magistrate Judge
Randolph F. Treece, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(d). Dkt. No. 59 ("Report–Recommendation").
Judge Treece recommends that all of Plaintiff Leonard
Hinton's ("Plaintiff") claims be dismissed, except that he
be awarded nominal damages for violation of his due
process rights by Defendant Uhler. Report–Rec. at 31–32.
Plaintiff timely filed Objections. Dkt. Nos. 62 ("Objections");
63 ("Addendum"). For the following reasons, the Report–
Recommendation is adopted in its entirety.

## II. STANDARD OF REVIEW

When a party makes a timely objection to a Report–
Recommendation, it is the duty of the Court to "make a *de
novo* determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b). Where, however, an objecting
"party makes only conclusory or general objections, or simply
reiterates his original arguments, the Court reviews the Report
and Recommendation only for clear error."*Farid v. Bouey*,
554 F.Supp.2d 301, 307 (N.D.N.Y.2008) (quoting *McAllan*

*v. Von Essen*, 517 F.Supp.2d 672, 679 (S.D.N.Y.2007))
(citations omitted); *see also Brown v. Peters*, No. 95–
CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22,
1997)."A [district] judge ... may accept, reject, or modify, in
whole or in part, the findings or recommendations made by
the magistrate judge."28 U.S.C. § 636(b).

## III. DISCUSSION

### A. First Disciplinary Hearing

Plaintiff argues that the evidence presented at his first
disciplinary hearing was not "reliable evidence" sufficient to
support the hearing officer's determination that Plaintiff was
guilty of the alleged conduct. Objs. at 1. Specifically, Plaintiff
argues that the evidence was insufficient because there was no
independent credibility assessment of, or written statements
by, the confidential informant or alleged victim to corroborate
Sergeant Gower's testimony. *Id.* at 1–2.

Plaintiff already raised this argument in great detail in his
Motion for summary judgment, *see* Dkt. No. 39 at 19–
22, and Judge Treece explicitly addressed it in the Report–
Recommendation, Report–Rec. at 12–15. Because Plaintiff's
argument is "a mere reiteration of an argument made to the
magistrate judge,"*Dove v. Smith*, No. 13–CV–1411, 2014
WL 1340061, at *1 (N.D.N.Y. Apr. 3, 2014) (Kahn, J.) the
Court reviews Plaintiff's objection only for clear error, *see
Chylinski v. Bank of Am., N.A.*, 434 F. App'x 47, 48 (2d
Cir.2011)). The Court finds that Judge Treece committed no
clear error in determining that Sergeant Gower's testimony
was sufficiently corroborated by his written report and other
evidence in the record. *See* Report–Rec. at 12–15; *see also
Kotler v. Daby*, No. 10–CV–0136, 2013 WL 1294282, at
*10 (N.D.N.Y. Mar. 28, 2013) (finding guard's testimony and
written report constituted "reliable evidence" under the "some
evidence" standard, and that an independent assessment of the
witnesses' credibility was not required).

### B. Second Disciplinary Hearing

 **\*2** Plaintiff argues that his due process rights were violated
at his second disciplinary hearing because Defendant Haug,
who conducted the disciplinary hearing, failed to interview or
make available four of Plaintiff's requested witnesses. Objs.
at 2. Specifically, Plaintiff asserts that he was prejudiced by
his inability to question Captain Scarafile ("Scarafile") and
Deputy Superintendent Kinderman ("Kinderman") because
they "ascertained the facts of th[e] incident, and would have
testified of [sic] those facts."*Id.* Moreover, corrections officer

Ruggerio ("Ruggerio") and inmate Burton ("Burton") both had relevant, first-hand knowledge of the circumstances of the alleged fight. *See id.; see also* Addendum at 2.

To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing. *See Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991). In his Objections, Plaintiff states that "[c]learly there is relevance of every witness that Plaintiff requested to testify on his behalf."Objs. at 2. However, Plaintiff fails to advance any specific arguments as to *how* these witnesses' testimonies would have affected the outcome of his disciplinary hearing.

Indeed, as Judge Treece points out, Kinderman and Scarafile were merely supervisors who were informed of the incident after it had already transpired. Report–Rec. at 19. Thus, they did not have first-hand knowledge of the events, and there is no indication that they would have testified favorably to Plaintiff. *See id.*Moreover, Ruggerio did not arrive until after the incident occurred, and his misbehavior report was virtually identical to that of Officer Betti, who testified at the hearing. *Id.* Thus, there is no indication that Ruggerio's testimony would have affected the outcome of the hearing. Finally, although Burton presumably could have offered relevant testimony, as he was the alleged victim of Plaintiff's attack, Plaintiff has not demonstrated how Burton's testimony would have affected the outcome of his hearing. To the contrary, as indicated in Sergeant Betti's Fight Investigation Report, Burton stated that Plaintiff began yelling at him for no reason and Plaintiff then hit him in the head with a frying pan. Report–Rec. at 20. Thus, Plaintiff's arguments that these witnesses' testimonies would have affected the outcome of his hearing are entirely speculative, and do not warrant finding a constitutional violation. *See* Report–Rec. at 2; *see also Grossman v. Bruce,* 447 F.3d 801, 805 (10th Cir.2006) ("[A] prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony would have affected the outcome of his case.").

**C. Third Disciplinary Hearing**
Plaintiff next argues that he has established an actual injury in connection with his third disciplinary hearing because he was confined in the Special Housing Unit ("SHU") "as a result of the constitutional violations."Objs. at 2. Plaintiff is correct that his constitutional rights were violated by Defendants' failure to timely provide Plaintiff with a copy of the disciplinary hearing determination. *See* Report–Rec. at

25–26. However, the copy of the hearing determination was merely the means by which to inform Plaintiff of the penalty to be imposed. Thus, Defendants' failure to provide Plaintiff with a copy of the hearing decision did not affect the actual determination, because the determination had already been made. In other words, Defendants' failure to provide Plaintiff with the hearing decision did not *cause* him to be confined in SHU—the penalty had already been imposed and was entirely independent of the failure to serve Plaintiff with a written confirmation of the penalty. *See McCann v. Coughlin,* 698 F.2d 112, 126 (2d Cir.1983) (noting that failure to provide a copy of a hearing determination occurs after the decision has been rendered). Therefore, Plaintiff has failed to show actual injury in relation to his third disciplinary hearing.

**D. Qualified Immunity**
 **\*3** Plaintiff's final objection is that Defendants are not entitled to qualified immunity. Objs. at 3. However, Judge Treece did not find that any Defendants were entitled to qualified immunity. Therefore, Plaintiff's argument is irrelevant.

**IV. CONCLUSION**
Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 59) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Plaintiffs' Motion (Dkt. No. 39) for summary judgment is **GRANTED in part and DENIED in part** consistent with the Report–Recommendation (Dkt. No. 59); and it is further

**ORDERED,** that Defendant's Cross–Motion (Dkt. No. 42) for summary judgment is **GRANTED in part and DENIED in part** consistent with the Report–Recommendation (Dkt. No. 59); and it is further

**ORDERED,** that Plaintiff be awarded nominal damages in the amount of one dollar ($1.00); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

LEONARD HINTON, Plaintiff,

-v-

A. PRACK, *Commissioner's Designee,* D. VENETTOZZI, *Commissioner's Designee,* S. BULLIS, *Hearing Officer,* D. HAUG, *Hearing Officer,* D. ROCK, *Superintendent; Upstate Correctional Facility,* UHLER, *Deputy Superintendent of Security; Upstate Correctional Facility,* Defendants.

### REPORT–RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Leonard Hinton brings this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his right to due process at three separate disciplinary hearings. *See* Dkt. No. 1, Compl. Plaintiff has moved for summary judgment. Dkt. No. 39. Defendants oppose that Motion, and Cross–Move for Summary Judgment. Dkt. No. 42. Plaintiff opposes Defendants' Cross–Motion. Dkt. Nos. 44, Pl.'s Opp'n, & 45, Pl.'s Supp. Opp'n. For the reasons that follow, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED,** Defendants' Cross–Motion for Summary Judgment be **GRANTED,** and that this action be **DISMISSED.**

### I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

**\*4** To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation,* 311 F.3d 534, 543 (2d Cir.2002) (quoting *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it ... [and] a

district court is not required to grant judgment as a matter of law for one side or the other."*Heublein, Inc. v. United States,* 996 F.2d at 1461.

## II. DISCUSSION

### A. Due Process

**\*5** Plaintiff alleges that Defendants violated his right to due process at three separate disciplinary hearings. *See generally* Compl.

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner[.]"*Sandin v. Conner,* 515 U.S. 472, 484 (1995). To state a due process claim under *§ 1983*, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id.* With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners [,]' " *Arce v. Walker,* 139 F.3d at 333 (quoting *Hewitt v. Helms,* 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[ ] the sentence in ... an unexpected manner[,]" *Sandin v. Conner,* 515 U.S. 472, 478 (1995).

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life."*Sandin v. Connor,* 515 U.S. at 484; *see also Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001) (citing *Sandin* ); *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir.1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement."*Spaight v. Cinchon,* 1998 WL 167297, at \*5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)); *see also Palmer v. Richards,*

364 F.3d 60, 64 (2d Cir.2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999) (citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration— between 101 and 305 days—development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards,* 364 F.3d at 64–65 (quoting *Colon v. Howard,* 215, F.3d 227, 232 (2d Cir.2000)); *see also Hanrahan v. Doling,* 331 F.3d 93, 97–98 (2d Cir.2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Edmonson v. Coughlin,* 1996 WL 622626, at \*4–5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"); *Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000) (noting that segregative sentences of 125–288 days are "relatively long" and therefore necessitate "specific articulation of ... factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards,* 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin,* 132 F .3d at 137; *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards,* 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin. Id.*

**\*6** Once a prisoner makes a threshold showing of atypical and significant confinement, the court should determine whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *Wolff*

*v. McDonnell,* 418 U.S. 539, 556 (1974). A prisoner placed in disciplinary segregation must be provided (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action. *Id.* at 564–66; *see also Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986); *Taylor v. Rodriguez,* 238 F.3d 188, 192 (2d Cir.2001) (quoting *Hewitt v. Helms,* 459 U.S. at 476).

With these principles in tow, we discuss the process that was provided at each of the disciplinary hearings at issue *seriatim.*

### 1. Liberty Interest

Defendants concede that, in the aggregate, the amount of time Plaintiff spent in the solitary housing unit ("SHU"), as a result of the three disciplinary hearings at issue, was sufficient to implicate a protected liberty interest.[1] Dkt. No. 42–7, Defs.' Mem. of Law, at p. 11; *see also*Dkt. No. 42–4, Steven Bullis Decl., dated Dec. 26, 2013, at Ex. A, Disciplinary Hr'g Tr. (hereinafter "1st Hr'g Tr."), dated Oct. 13–18, 2010, at p. 1; Dkt. No. 42–5, Donald Haug Decl., dated Dec. 24, 2013, at Ex. A, Disciplinary Hr'g Report, dated Sept. 7–13, 2010;[2] Dkt. No. 42–6, Donald Uhler Decl., dated Dec. 27, 2013, at Ex. A, Disciplinary Hr'g Tr. (hereinafter "3rd Hr'g Tr."), dated February 2–3, 2011, at p. 1. Accordingly, we need only determine whether Plaintiff was deprived of any of the minimum requirements of due process during any of the disciplinary hearings at issue.[3]

### 2. First Disciplinary Hearing

The following facts are undisputed.

On July 25, 2010, Sgt. Gower[4] issued a misbehavior report charging Plaintiff with extortion, soliciting a sexual act, and making a third party call. Defendant Bullis found Plaintiff guilty of all three violations, and sentenced him to six months in the SHU as well as six months loss of packages, commissary, phone, and good time credits. Dkt. No. 39–3, App. to Pl.'s Mot. for Summ. J. (hereinafter "Pl.'s App."), Sec. 1, at Ex. A, Misbehavior Rep., dated July 25, 2010 (hereinafter "1st Misbehavior Rep."); 1st Hr'g Tr. at p. 1. Plaintiff appealed the decision; but his

appeal was denied by Defendant Prack, the Director of the Special Housing/ Inmate Disciplinary Program, on December 20, 2010. *See* Pl.'s App., Sec. I, at Exs. E, Appeal Form, dated Oct. 18, 2010; & F, Appeal Dec., dated Dec. 20, 2010. Subsequently, Plaintiff challenged the disciplinary determination, in State Court, pursuant to N.Y. C.P.L.R. § 7803 ("Article 78").*Id.* at Ex. G, Pl.'s Art. 78 Pet., dated Dec. 29, 2010. The New York State Appellate Division, Fourth Department, denied Plaintiff's petition, and unanimously upheld Defendant Bullis's disciplinary determination. *Id.* at Ex. I, Dec., dated Nov. 9, 2012.

**\*7** Plaintiff now argues that he is entitled to summary judgment as to his claims against Defendants Bullis and Prack for violations of his right to due process in conjunction with this hearing, because Defendants lacked any credible evidence to support the decision or its subsequent affirmation.*See, e.g.,* Dkt. No. 44–1, Pl.'s Opp'n at p. 2.[5] Defendants argue that they are entitled to summary judgement as to this claim because Plaintiff was provided all of the process that was due. Dkt. No. 42–7, Defs.' Mem. of Law, at pp. 13–16.

### a. Notice

It is undisputed that Plaintiff was served with a copy of the misbehavior report on October 6, 2010. Pl.'s App., Sec. I, Ex. D, Hr'g Disposition. Accordingly, Plaintiff received notice, as required, more than twenty-four hours prior to his hearing. *See Sira v. Morton,* 380 F.3d 57, 70 (2d Cir.2004) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. at 564 for the proposition that "[d]ue process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing"). Moreover, the misbehavior report noted, *inter alia:*"[b]ased on an investigation [Sgt. Gower] conducted it has been determined that inmate Hinton ... was attempting to solicit sexual acts and was attempting to extort money from a family member of inmate Veach .... Inmate Hinton also gave inmate Veach two packs of tobacco without authorization of any staff." 1st Misbehavior Rep. Such notice was adequate to inform Plaintiff of the nature of the offenses for which he was charged. *See Sira v. Morton,* 380 F.3d at 70 (quoting *Taylor v. Rodriguez,* 238 F.3d at 193, for the proposition that "due process requires more than a conclusory charge; an inmate must receive notice of at least some specific facts underlying the accusation such that he can prepare a defense to those charges and not be made to explain away vague

charges set out in a misbehavior report.") (internal quotation marks omitted). [6]

### b. Opportunity to be Heard

The record clearly establishes that Plaintiff was present at the hearing, able to question witnesses, and present rebuttal evidence. *See generally* 1st Hr'g Tr. This remains true notwithstanding the fact that four of the witnesses Plaintiff called refused to testify. *See id.* at p. 10. Crucially, "it is well settled that [a]n inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings." *Fernandez v. Callens,* 2010 WL 4320362, at *11 (W.D.N.Y. Oct. 29, 2010) (citing *Wolff v. McDonnell,* 418 U.S. at 567–68; *Kalwasinski v. Morse,* 201 F.3d 103, 109 (2d Cir.1999); & *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993)). The fact that these witnesses refused to testify on Plaintiff's behalf does not alter the fact that he was given the opportunity to call witnesses. *See Creech v. Schoellkoph,* 688 F.Supp.2d 205, 213 (W.D.N.Y.2010) (finding no due process violation where two witnesses called by inmate refused to testify); *see also Edmonson v. Coughlin,* 1996 WL 622626, at *8 (W.D.N.Y. Oct. 4, 1996) (citing *Wolff v. McDonnell,* 418 U.S. at 568–69 for the proposition that *"Wolff* specifically recognized the discretion of prison officials to decline to call as witnesses fellow inmates who do not wish to testify, or witnesses who know nothing of the underlying events"); *Jamison v. Fischer,* 2013 WL 5231457, at *3 (S.D.N.Y. July 11, 2013) (citing cases for the proposition that "if a requested witness refuses to testify at a disciplinary hearing, the hearing officer is not constitutionally required to compel the witness to testify."). Moreover, in such situations, all that is required of the hearing officer is that he provide the inmate with notice of the fact that witnesses are being withheld and explain the reasons why. *See* N.Y. COMP.CODES R. & REGS. tit. 7, § 254.5(a) ("If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented."). Here, Defendant Bullis explained at the hearing that:

> **\*8** Mr. Hinton, on your assistant form you requested four potential witnesses. It is written down that they all refused to testify and in the file there are four refusal forms, one by inmate Maida ... refuses to testify he does not want to be involved. Inmate King ... states he

does not want to be involved with any of this, he doesn't want to get involved with any of this don't call me again as stated on the form. The next is from inmate Woods ... stating he does not want to be involved as he stated on the form. The next is for inmate Veach ... stating he does not want to be involved he claimed he does not know anything about this incident on 7/28/2010.

1st Hr'g Tr. at p. 10.

Thus, we can find no evidence of any constitutional deficiency in Plaintiff's opportunity to appear, call witnesses, or present rebuttal evidence at the first disciplinary hearing. *See Wolff v. McDonnell,* 418 U.S. at 564–66.

### c. Written Decision

It is clear from the record that at 11:15 a.m., on October 8, 2010, Plaintiff received a written statement as to the evidence relied upon and the reasons for the disciplinary action that was taken. Pl.'s App., Sec. I, Ex. D, Hr'g Disposition Form.

Therefore, under *Wolf v. McDonnell,* Plaintiff received all of the process due to him. 418 U.S. at 564–66.

### d. Remaining Arguments

Plaintiff also argues that there was no credible evidence to support Defendant Bullis's disciplinary determination. While an inmate is *not* entitled to a hearing officer with the same level of impartiality required by judges; it is true that he is entitled to a hearing untainted by arbitrary or pre-determined findings of guilt. *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Nonetheless, a hearing officer's limited impartiality requirements are satisfied where the record contains "some evidence" to support the officer's findings. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Id.,* 472 U.S. at 455–56 (citations omitted). That being said, only " 'reliable' evidence can

constitute 'some evidence.' " *Sira v. Morton,* 380 F.3d at 76 (citing *Luna v. Pico,* 356 F.3d at 488).

Here, Defendant Bullis's determination was supported by ample reliable evidence, chiefly, the testimony and misbehavior report of Sgt. Gower. *See* Pl.'s App., Sec. I at Ex. C.

As noted above, the misbehavior report stated, *inter alia:* "[b]ased on an investigation [Sgt. Gower] conducted it has been determined that inmate Hinton ... was attempting to solicit sexual acts and was attempting to extort money from a family member of inmate Veach .... Inmate Hinton also gave inmate Veach two packs of tobacco without authorization of any staff." 1st Misbehavior Rep. At the hearing, Sgt. Gower explained, in sum and substance, that on the morning of July 25, 2010, an unidentified inmate told him that Plaintiff had attempted to solicit sex from Inmate Veach. As a result, Sgt. Gower conducted an investigation during which he interviewed Inmate Veach, who reported that "approximately 2 weeks before that he got two packs of tobacco from [Plaintiff] he was unable to pay him so [Plaintiff] had requested he perform sexual acts for approximately ten days to pay him for the tobacco." 1st Hr'g Tr. at p. 6. Veach also informed Sgt. Gower that Plaintiff had attempted to pull him into a toilet stall but stopped when Inmate Moody walked into the bathroom area. Gower verified with Inmate Moody that he saw Veach and Hinton in the bathroom at the same time; however, Moody did not see Hinton pulling Veach into the stall. Gower ordered that Veach be examined by medical, and no evidence of sexual misconduct was found. Gower also testified that Veach informed him that Plaintiff and Inmate McGee had set up a three-way call in an attempt to extort fifteen dollars from Inmate Veach's sister for the tobacco. Gower reported that he verified this with inmate McGee who admitted to helping to orchestrate the three-way call. *Id.* at pp. 6–8.

**\*9** Standing alone, the unidentified inmate's claims that Plaintiff solicited sex from Inmate Veach would be insufficient to satisfy the "some evidence" standard applicable to prison disciplinary hearings. *See Dawkins v. Gonyea,* 646 F.Supp.2d 594, 611 (S.D.N .Y.2009) (citing *Sira v. Morton,* 380 F.3d at 78, for the proposition that "if any confidential informant's testimony was based solely on hearsay, a greater inquiry into the reliability of this hearsay information is required."); *Howard v. Wilkerson,* 768 F.Supp. 1002, 1007 (S.D.N.Y.1991) (citing *Vasquez v. Coughlin,* 726 F.Supp. 466, 471 (S.D.N.Y.1989), for the proposition that

"[s]ince *[Superintendent v.] Hill,* [472 U.S. 445 (1985) ] it has been held that hearsay evidence does not constitute 'some evidence' "). However, here, Defendant Bullis's determination was supported by Gower's misbehavior report. More importantly, Gower testified at the hearing that prior to issuing the misbehavior report he independently corroborated the statements made to him by the unidentified inmate and the victim. Gower's investigation, report, and testimony were all valid bases from which Defendant Bullis could conclude that the information was reliable. *See Sira v. Morton,* 380 F.3d at 78 ("Where the original declarant's identity is unknown or not disclosed, the hearing officer may nevertheless consider such factors as the specificity of the information, the circumstances under which it was disclosed, and the degree to which it is corroborated by other evidence."). Since Defendant Bullis found Gower's testimony to be reliable, Bullis Decl. at ¶ 17, we need not conduct an independent assessment of Gower's credibility. *Kotler v. Daby,* 2013 WL 1294282, at \* 10 (N.D.N.Y. Mar. 28, 2013) (finding guard's testimony and written report constituted some evidence, and that an independent assessment of the charging officer's credibility is neither required nor encouraged); *Thomas v. Connolly,* 2012 WL 3776698, at \*23 (S.D.N.Y. Apr. 10, 2012) (finding that disciplinary determination supported by the investigating officer's report was sufficient to satisfy the some evidence requirement). Thus, we conclude that no reasonable juror could conclude that Plaintiff's disciplinary conviction was not based on reliable evidence. [7]

Furthermore, Plaintiff's argument that Inmate Veach's statements to Sgt. Gower during his investigation are unreliable in light of the fact that Inmate Veach subsequently refused to testify at Plaintiff's hearing—reportedly, on the grounds that he knew nothing about the alleged incident—are also unavailing. *See* Pl.'s Mem. of Law at pp. 17–20; Pl.'s App., Sec. I, Ex. C, Inmate Refusal Form, dated Oct. 8, 2010; *see also Louis v. Ricks,* 2002 WL 31051633, at \*13 (S.D.N.Y. Sept. 13, 2002) (surveying cases for the proposition that no due process violation occurred where the hearing assistant relied on testimony from the alleged victim which the victim later recanted). [8]

**\*10** Accordingly, having determined that Plaintiff received all of the process that was due to him with regard to his first disciplinary hearing, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** as to this claim, that Defendants' Cross–Motion for Summary Judgment be **GRANTED,** and that this claim be **DISMISSED.**

*e. Defendant Prack*

Plaintiff alleges that Defendant Prack was liable in his supervisory capacity for Defendant Bullis's alleged due process violation because he knew of but failed to remedy the violation when he affirmed Defendant Bullis's disciplinary determination. Pl.'s Mem. of Law at p. 25. An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he is personally involved in the alleged deprivation.

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted).

However, having failed to find any evidence of an underlying constitutional violation, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** as to Plaintiff's claim against Defendant Prack arising out of his affirmation of Defendant Bullis's disciplinary determination. *See Elek v. Inc. Vill. of Monroe,* 815 F.Supp.2d 801, 808 (S.D.N.Y.2011) (collecting cases for the proposition that "because Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability"). Furthermore, we also recommend that Defendants' Motion be **GRANTED** with respect to the same, and that this claim be **DISMISSED.**

### 3. Second Disciplinary Hearing

The following facts are undisputed.

On August 11, 2010, Plaintiff was charged with violent conduct, assault on an inmate, and fighting by Sergeant Betti, and violent conduct, creating a disturbance, and fighting by Corrections Officer Ruggerio. [9] According to Sergeant Betti's report "inmate Hinton admitted to [her] that he had a verbal argument with inmate Burton over some missing food items. He said the argument ended with him picking up a frying pan and hitting inmate Burton once over the head with it."Haug Decl., Ex. A, Betti Misbehavior Rep., dated Aug. 11, 2010. According to Officer Ruggerio, on August 11, he heard a crashing noise in the room near the kitchen, and upon responding "observed inmate Hinton lying on his left side ... near his overturned wheelchair.... [He] also observed Inmate Burton standing over Hinton with a clinched fist. There was also a medium sized stainless steel frying pan lying near [Hinton's wheelchair]."*Id.,* Ex. A, Ruggerrio Misbehavior Rep., dated Aug. 11, 2010.

**\*11** Defendant Haug conducted a disciplinary hearing between September 7 and 13, 2010, and found Plaintiff guilty of all six violations. Decl., Ex. A, Hr'g Disposition, dated Sept. 13, 2010. On November 12, 2010, Defendant D. Venettozzi, the Acting Director of the Special Housing/Inmate Disciplinary Program, affirmed the disciplinary determination. *Id.* at Ex. C, Appeal Dec., dated Nov. 12, 2010. However, as a result of an Article 78 proceeding brought by Petitioner before the Fourth Department, the determination was overturned and vacated because "the hearing officer's effective denial of petitioner's request to call C.O. Ruggerio, Inmate Burton, Captain Scarafile and Deputy Superintendent Kinderman [10] as witnesses, without [ ] stated good faith reasons, constituted a clear constitutional violation[.]"*Id.* at Ex. C, Dec. & J., dated May 27, 2011. As a result, Plaintiff's September 13 disciplinary decision was administratively reversed on August 4, 2011. *Id.* at Ex. B, App. Dec., dated Aug. 4, 2011.

In his Motion, Plaintiff claims he is entitled to summary judgment as to his due process claims against Defendant Haug because he was improperly denied the right to call witnesses on his behalf, and against Defendant Venettozzi for affirming Defendant Haug's disciplinary determination. *See* Pl.'s Opp'n at p. 5. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff received all of the

process that was due at his second disciplinary hearing. Defs.' Mem. of Law at pp. 17–19.

### a. Notice

It is uncontested that Plaintiff received a copy of the misbehavior reports at issue on August 12, 2010. Haug Decl. at ¶ 9 & Ex. A, Tier III Data Sheet, dated Aug. 22, 2010. Furthermore, each report contained a detailed factual account of the basis of the charges, the names of those involved, and the date of the relevant events. *Id.* at Ex A, Misbehavior Reports, dated Aug. 11, 2010. Accordingly, Plaintiff clearly received constitutionally sufficient notice.

### b. Opportunity to be Heard

According to the Fourth Department, the "denial of petitioner's request to call C.O. Ruggerio, Inmate Burton, Captain Scarafile and Deputy Superintendent Kinderman as witnesses, without a stated good faith reason[ ], constituted a clear constitutional violation."*Id.* at Ex. B, Dec. & J. at p. 5. As a result of the Fourth Department's decision, Plaintiff's disciplinary determination was subsequently administratively overturned. However, neither of these facts is dispositive for purposes of the instant action. *Gutierrez v. Coughlin,* 841 F.2d 484, 486 (2d Cir.1988) (citing cases for the proposition that collateral estoppel does not preclude defendants from re-litigating due process violations decided in an Article 78 proceeding in a subsequent 1983 case because, *inter alia,* "appellees could not have been held personally liable in such a proceeding, they did not have the same incentive to litigate that state court action as they did the federal § 1983 action[,]" and "the defenses of absolute or qualified immunity, or lack of personal involvement, were not available to appellees"); *see also LaTorres v. Selsky,* 2011 WL 7629515, *6 n. 10 (N.D.N.Y. Aug. 1, 2011) (citing *Gutierrez v. Coughlin* ).

**\*12** Moreover, Plaintiff's claim is subject to review for harmless error.*Sims v. Artuz,* 103 F. App'x 434, 436 (2d Cir.2004) (upholding magistrate's determination applying harmless error to defendant's undisputed failure to provide a reason for refusing to call witnesses during a disciplinary hearing); *Clark v. Dannheim,* 590 F.Supp.2d 426, 431 (W.D.N.Y.2008) (same); *Colantuono v. Hockeborn,* 801 F.Supp.2d 110, 115 (W.D.N.Y.2011) (citing *Clark v. Dannheim,* 590 F.Supp.2d 426, (W.D.N.Y.2008), for the

proposition that "dismissing state prisoner's due process claim based on the hearing officer's denial of plaintiff's requests to review certain medical records, and to call DOCS sergeant as a witness, where plaintiff failed to demonstrate that he was prejudiced as a result"); *cf. Powell v. Coughlin,* 953 F.2d 744, 751 (2nd Cir.1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

Here, notwithstanding the fact that a denial of the right to call witnesses without an explanation is a violation of New York's prison disciplinary regulations, N.Y. COMP.CODES R. & REGS. tit. 7, § 254.5(a), Defendant Haug's decision to deny, without reason, Plaintiff's request to call as witnesses Deputy Superintendent Geoghegan, Captain Scarafile, and Officer Rugerio did not rise to the level of a due process violation because Plaintiff failed to allege, in any fashion, how he was prejudiced. Indeed, it is undisputed that Deputy Superintendent Geoghegan and Captain Scarafile had no personal knowledge of the event; their only involvement was that they were informed about the alleged fight after the fact. Haug Aff. at ¶ 18 & Ex. A, Unusual Incident Report, dated Aug. 19, 2010, at p. 2. Similarly, Officer Ruggerio's misbehavior report confirms that he arrived on scene after the event, and the details of his report are nearly identical to those provided by Officer Betti, who testified at the hearing. *Id.* at ¶¶ 10 & 16–17, & Ex. A, Misbehavior Reports. Accordingly, their testimony was at best cumulative, and quite possibly irrelevant. *See Hamilton v. Fischer,* 2013 WL 3784153, at *10 (W.D.N.Y. July 18, 2013) (dismissing due process claims based on a hearing officer's failure to call witness who were not present for the incident at issue because the error was harmless).

Likewise, the record in this case compels us to reach a similar conclusion with regard to the fourth witness, Inmate Burton, although by a slightly different route. With respect to his decision to deny Plaintiff's request to call Inmate Burton, Defendant Haug avers that "I have no recollection of who that inmate was or why his testimony would have had any bearing on whether or not Plaintiff Hinton hit another inmate with a frying pan. Had I believed that this inmate had information that was pertinent to Plaintiff Hinton's defense, I would have requested his testimony."*Id.* at ¶ 19. It cannot seriously be argued that Inmate Burton, the inmate Plaintiff allegedly hit over the head with the frying pan, did not have any relevant information with regard to the incident at issue.

**\*13** However, nothing in Plaintiff's papers [11] nor the many documents submitted by Defendants indicates that had Inmate Burton been called his testimony would have altered the course of the hearing. Rather, based on the record before us, we can only conclude the opposite. In the Fight Investigation Rep., dated August 11, 2010, Sergeant Betti reported that "Burton stated [that] Hinton approached him in the day room and was yelling at him for no reason. Hinton hit him with a pan in the head."Haug Decl., Ex. A. Crucially, Burton's statement was relied upon by Defendant Haug. *Id.,* Ex. A, Hr'g Disposition Report, dated Sep. 13, 2010, at p. 2.

Given the lack of any indication in the record that Inmate Burton would have testified favorably, as well as his own admissions to Sergeant Betti that he struck Inmate Burton with the pan, Plaintiff has failed to establish that he was prejudiced by Defendant Haug's refusal to call Inmate Burton as a witness. *See Clark v. Dannheim,* 590 F.Supp.2d at 430–31 (concluding, after examining the record, that failure to call a witness who had clearly relevant information was non-prejudicial because "there [wa]s no indication or reason to believe that his testimony would have been helpful to plaintiff"); *see also Sims v. Artuz,* 103 F. App'x at 436 (upholding magistrate's determination that exclusion of witnesses from disciplinary hearing was harmless error where plaintiff "ha [d] not shown that he was prejudiced in any way"); *Tafari v. Rock,* 2012 WL 1340799 (W.D.N.Y. Apr. 18, 2012) ("A prisoner cannot demonstrate prejudice and thus non-harmless error based upon pure speculation.").

### c. Written Decision

It is undisputed that Plaintiff received a copy of the notice of decision including the evidence that was relied upon, as well as an explanation of the reasons for the punishment assigned. *Id.* at Ex. A, Hr'g Disposition Form, dated Sep. 13, 2010, at p. 2.

Accordingly, we recommend that Plaintiff's Motion be **DENIED** as to his due process claim against Defendant Haug arising out of the second disciplinary hearing, that Defendants' CrossMotion be **GRANTED** with respect to the same, and that this claim be **DISMISSED.**

### d. Defendent Venettozzi

Having established the absence of any underlying constitutional violation, Plaintiff cannot maintain a cause of action against Defendant Venettozzi based on supervisory liability for affirming Defendant Haug's disciplinary determination. *See Elek v. Inc. Vill. of Monroe,* 815 F.Supp.2d at 808.

Accordingly, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** with respect to his claim against Defendant Venettozzi for affirming Defendant Haug's disciplinary determination, that Defendants' Cross–Motion for Summary Judgment be **GRANTED** as to the same, and that this claim be **DISMISSED.**

### 4. Third Disciplinary Hearing

The following facts are undisputed.

On January 19, 2011, Plaintiff was charged with two counts of possessing unauthorized medication and smuggling. 3rd Hr'g Tr. at p. 1. On February 2–3, 2011, Defendant Uhler conducted a Tier III disciplinary hearing, from which Plaintiff was excluded. *See generally id.*Plaintiff was convicted of all three offenses and sentenced to thirty-six months in SHU as well as thirty-six months loss of packages, commissary, phone, and good time credits. *Id.* at p. 1. On February 3, 2011, Plaintiff appealed Defendant Uhler's disciplinary determination. Compl. at p. 6. On March 29, 2011, Defendant Venettozzi modified Plaintiff's punishment to eighteen months SHU and corresponding loss of privileges. Uhler Decl., Ex. B, Appeal Dec., dated Mar. 29, 2011. On June 21, 2011, Defendant D. Rock, Superintendent of Upstate Correctional facility, refused Plaintiff's request for discretionary review of his disciplinary determination. *Id.* at Ex. C, Lt., dated June 21, 2011.

**\*14** On June 30, 2011, Plaintiff filed an Article 78 petition challenging the disciplinary determination. On December 2, 2012, the Honorable S. Peter Feldstein, Acting Supreme Court Justice in Franklin County, New York, determined that "the hearing officer did not err in conducting the Tier III Superintendent's Hearing in the absence of petitioner."Pl.'s App. at Sec. III, Ex. A, at p. 4. However, Judge Feldstein found that Plaintiff "must prevail" as to his argument that "he did not receive a copy of the written hearing disposition sheet, including the statement of evidence relied upon by the hearing officer, and the statement of reason(s) for the disposition imposed."*Id.* at pp. 5–6. Judge Feldstein further

noted that prison officials should "process any additional administrative appeal from the results and disposition of the Tier III Superintendent's Hearing concluded February 3, 2011 that petitioner files within 30 days service" of his decision. *Id.* at p. 6.

Plaintiff contends that he is entitled to summary judgment against Defendant Uhler because he held the third disciplinary hearing in Plaintiff's absence and because he failed to provide Plaintiff with written notice of the disciplinary determination and the evidence on which it was based. Pl.'s Mem. of Law at pp. 25–27. Plaintiff further claims that Defendants Venettozzi, Prack, and Rock were personally involved in depriving him of his due process right because they affirmed Defendant Uhler's determination. Pl's Opp'n at ¶ 53. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff received all of the process that was due at the subsequent disciplinary hearing. Defs.' Mem. of Law at pp. 20–24.

### a. Notice

Plaintiff concedes that he "receive[d] advance notice of the charges, by service of the misbehavior report."Dkt. No. 39–2, Pl.'s Mem. of Law, at ¶ 34.

### b. Opportunity to be Heard

Originally, Plaintiff contended that Defendant Uhler violated his right to due process by unlawfully excluding him from attending the third disciplinary hearing. Pl.'s Mem. of Law at pp. 25–27. However, Plaintiff has since conceded that he is barred from re-litigating this issue in the instant matter by the doctrine of collateral estoppel.[12]

A review of Judge Feldstein's decision reveals that he indeed already considered the issue of whether "the Tier III Superintendent's Hearing was unlawfully conducted in his absence" in Plaintiff's Article 78 action. Pl.'s App. at Sec. III, Ex. A, at p. 3. Judge Feldstein noted that, "an inmate has a fundamental right to be present at a Superintendent's Hearing unless he or she refused to attend, or is excluded for reasons of institutional safety or correctional goals."*Id.* (internal quotations, alterations, and citations omitted). After considering the evidence before him, including a transcript of the hearing conducted in Plaintiff's absence—containing on-the-record testimony from multiple prison officials stating,

in sum and substance, that they made every effort to bring Plaintiff to his disciplinary hearing but Plaintiff refused to comply with prison handcuffing procedures— Judge Feldstein concluded that "the hearing officer did not err in conducting the Tier III Superintendent's Hearing in the absence of petitioner."*Id.* at pp. 3–6.

**\*15** Crucially, and in keeping with the standard applied by Judge Feldstein, it is well established federal precedent that an inmate's refusal to attend a disciplinary hearing waives his due process objections where it occurs through no fault of prison authorities. *Tafari v. McCarthy,* 714 F.Supp.2d 317, 380 (N.D.N.Y.2010) (citing *Howard v. Wilkerson,* 768 F.Supp. 1002, 1006 (S.D.N.Y.1991)). Accordingly, Judge Feldstein's conclusion that Plaintiff's own actions justified holding the hearing in his absence is entitled to preclusive effect in the instant action.[13] *See Williams v. Pepin,* 2011 WL 7637552, *6 (N.D.N.Y. Dec. 23, 2011) (holding that plaintiff's due process claims which were rejected in an earlier Article 78 action were precluded from being re-litigated in a subsequent § 1983 action under the doctrine of collateral estoppel).

Accordingly, Plaintiff's due process rights were not violated when his third disciplinary hearing was held in his absence.

### c. Some Evidence

It is clear that Defendant Uhler's disciplinary determination was supported by sufficient reliable evidence. Specifically, Defendant Uhler read the following into the record:

> The first report is by Officer Gravlin.... On 1/19/11 at approximately 9:45 AM, I conducted a pat frisk of inmate Hinton ... on 11 A 1 Gallery.... Inmate Hinton had a total of 29 pills in his front right pocket. The block nurse identified the pills as neurontin, baclofen. Both are prescription medication given to the inmate on medication rounds.... The second Report [states] ... January 19th, 2011 10:20 A.M.... On the above date and time I CO Bogardus ... was helping give inmate Hinton his level one property after being transferred from eleven building to ten building. As I was going through the letters I

noticed envelopes with no addresses with objects in them sealed. I opened the envelopes and found pills. After opening all the envelopes I took the pills to the block Nurse Holmes identified them and counted them which is what came up with [sic] 319 neurontin 600 milligram, 205 baclofen 10 milligram, 100 amlodipine 5.

3rd Disciplinary Hr'g Tr. at p. 4.

Given the specificity of these reports as well as the fact that they were authored by officers with first hand knowledge of the events, no rational juror could conclude that Defendant Uhler lacked sufficient reliable evidence to support his determination. *See Thomas v. Connolly,* 2012 WL 3776698, at *23; *Creech v. Schoellkoph,* 688 F.Supp.2d 205, 214–15 (W.D.N.Y.2010) (finding disciplinary determination relying on misbehavior report was sufficient for purposes of "some evidence" standard where "the misbehavior report was made by the officer personally involved in the ... incident, and is based on his first hand observation, and contains a detailed account of that incident, including the time, place, circumstances, and names of participants").

### d. Written Decision

It is undisputed that Plaintiff did not receive a formal written statement of the third disciplinary determination "until at least six months after the hearing was actually held." Pl.'s Opp'n at Ex. A, Hinton Aff. [14]

**\*16** It is clear that Plaintiff's due process rights were violated by Defendants' failure to provide him with a copy of this statement. *See Lunney v. Brureton,* 2007 WL 1544629, at *28 (S.D.N.Y. May 29, 2007) (surveying cases for the proposition that "the right to receive a written statement of the disposition is a requirement that has been in place since the Supreme Court's decision in *Wolff v. McDonnell* ") (internal quotation marks, alterations, and citations omitted). However, notwithstanding this violation, Plaintiff is not entitled to anything other than nominal damages in the instant case because he has failed to establish an actual injury. *See McCann v.. Coughlin,* 698 F.2d 112, 126 (2d Cir.1983) (citing *Carey v. Piphus,* 435 U.S. 247, 266–67 (1978), for the proposition that "[i]t is well established that to collect compensatory damages in an action brought

pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury"); *Thomas v. Annucci,* 2008 WL 3884371, at *5 (N.D.N.Y. Aug. 19, 2008) (citing, *inter alia, McCann v. Coughlin* for the same proposition).

Here, notwithstanding the fact that Plaintiff's constitutional rights were violated, he cannot establish actual injury. To begin with, Plaintiff cannot argue that the failure to provide him with a written notice of the determination caused him to be sentenced to a term of SHU imprisonment; indeed, that determination was made before the duty to provide Plaintiff with a copy of the notice even arose. *Cf. McCann v. Coughlin,* 698 F.2d at 126 (noting that "the failure to provide McCann with a written statement of the Committee's decision and underlying reasons could not have caused his injury. If he had received such a written statement, it would have been after the Committee rendered its decision."). Thus, in order to establish that the Defendants' failure to provide him with a copy of the notice caused him actual injury, Plaintiff would have to show that because he did not have access to the information contained in the notice, he was unable to mount a meritorious appeal, and therefore, was forced to remain in SHU longer than necessary. *Cf. Miner v. City of Glens Falls,* 999 F.2d 655, 660 (2d Cir.1993) (citing *McCann v. Coughlin,* 698 F.2d at 126, for the proposition that "[i]n this Circuit, the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages.... It was therefore Miner's burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed.").

Yet, despite the fact that he ultimately received a copy of the notice prior to commencing the instant action, Plaintiff fails to allege that had he known the evidentiary basis for his conviction as contained in the notice earlier, he would have been able to successfully appeal the determination. Indeed, according to his Complaint, despite the fact that Judge Feldstein explicitly granted him the right to file additional appeals after he had obtained a copy of the notice, his subsequent attempts were unsuccessful. *See* Compl. at p. 6; *see also* Pl.'s App. at Sec. III, Ex. A, at pp. 5–6. [15] Thus, Plaintiff's claim fails because he cannot establish that the failure to provide him with a copy of the hearing disposition in a timely manner caused him to suffer any actual injury. [16]

**\*17** Moreover, Plaintiff is not entitled to punitive damages in the instant action. "Courts may award punitive damages

in situations where a defendant's conduct is 'willful or malicious,' or where defendants have demonstrated 'reckless intent' or 'callous indifference.' " *Giano v. Kelly,* 2000 WL 876855, at \*26 (W.D.N.Y. May 16, 2000) (quoting *Memphis Comty. School Dist. v. Stachura,* 447 U.S. 299, 306 (1986)). Here, nothing in the record establishes that Defendant Uhler acted maliciously or willfully with regard to his failure to provide Plaintiff with a copy of the notice. Therefore, the court recommends **DENYING** plaintiff's request for punitive damages.

Having failed to establish any actual injury, Plaintiff is only entitled to receive nominal damages in the amount of one dollar. *McCann v. Coughlin,* 698 F.2d at 126. Accordingly, we recommend that Defendants' Cross–Motion for Summary Judgment be **GRANTED** as to Plaintiff's claim that he was unlawfully excluded from the third disciplinary hearing and **DENIED** as to Plaintiff's claim that he was not provided with a copy of the hearing disposition in a timely manner. We further recommend that Plaintiff's Motion for Summary Judgment be **GRANTED** with respect to his claim that Defendants failed to provide him with a written disposition of the third disciplinary hearing, and that, in full satisfaction of his constitutional deprivation, he be awarded the sum of one dollar in nominal damages.

### e. Defendants Venettozzi, Prack, and Rock

Plaintiff claims that "[s]ince Venettozzi, Prack[,] and Rock all had [a] hand in affirming the [third disciplinary] decision, they as well are liable."Pl.'s Mem. of Law at p. 27. Courts within the Second Circuit are split over whether the mere allegation that a supervisory official affirmed a disciplinary determination is sufficient to establish personal liability. We subscribe to the affirmance plus standard, which holds that the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement. *See Brown v. Brun,* 2010 WL 5072125, at \*2 (W.D.N.Y. Dec. 7, 2010) (noting that courts within the Second Circuit are split with regards to whether the act of affirming a disciplinary hearing is sufficient to allege personal involvement of a supervisory official, and concluding that the distinction appears to hinge upon whether the official proactively participated in reviewing the administrative appeal or merely rubber-stamped the results). Here, Plaintiff fails to make a single non-conclusory allegation from which a reasonable juror could conclude that Defendants Venettozzi, Prack,

and Rock did anything other than rubberstamp Plaintiff's disciplinary determination.

Accordingly, we recommend that Plaintiff's Motion for Summary Judgment as to his claims against Defendants Venettozzi, Prack, and Rock, for affirming the third disciplinary disposition be **DENIED,** and that Defendants' Motion be **GRANTED** with respect to the same, and that this claim be **DISMISSED.**

### B. Qualified Immunity

**\*18** Defendants argue that they are entitled to qualified immunity. Defs.' Mem. of Law at pp. 23–24. However, given that we have recommended dismissing all of Plaintiff's claims except his claim against Defendant Uhler, we do not discuss whether any of the other Defendants are entitled to qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). However, some limited discussion is necessary with regard to Plaintiff's due process claim against Defendant Uhler for the failure to provide Plaintiff with a written copy of the disposition.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton,* 483 U.S. 635, 639 (1987); *Lewis v. Cowan,* 165 F.3d 154, 166 (2d Cir.1999). Until recently, courts faced with qualified immunity defenses have applied the procedure mandated in *Saucier v. Katz,* 533 U.S. 194 (2001). That case set forth a two-pronged approach whereby the court must first decide whether the facts alleged, or shown, make out a violation of a constitutional right. If yes, the court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194 at 201–02. Recently, however, the Supreme Court softened the rigid approach enunciated in *Saucier. See Pearson v. Callahan,* 555 U.S. 223 (2009). Now, the *Saucier* two-pronged test is not mandated in terms of

the order in which the prongs may be addressed, though the sequence of review may remain appropriate or beneficial. *Id.* at 818.

To determine whether a right was clearly established for purposes of qualified immunity, courts must consider "whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his [or her] actions were unlawful." *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *see also Nicholas v. Miller,* 189 F.3d 191, 195 (2d Cir.1999).

A party is entitled to summary judgment on qualified immunity grounds if the court finds that the rights asserted by the plaintiff were not clearly established, or that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff [ ], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997) (citations omitted).

 **\*19** As discussed *supra,* the right to receive a written copy of the hearing disposition, including the evidence relied upon and the reasons for the sentence, has been clearly established since *Wolff v. McDonnell. Lunney v. Brureton,* 2007 WL 1544629, at \*28. Moreover, no rational juror could conclude that it was objectively reasonable for Defendant Uhler not to provide Plaintiff with a copy of his third disciplinary hearing disposition. Accordingly, Defendant Uhler is not entitled to qualified immunity with respect to this claim.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Plaintiff's Motion for Summary Judgment (Dkt. No. 39) be **GRANTED** in part and **DENIED** in part as follows:

1. **GRANTED** to the extent that Plaintiff is entitled to summary judgment as to the issue of whether Defendant Uhler violated his right to due process by failing to provide him with a copy of the hearing disposition from his third disciplinary hearing, **HOWEVER,** in light of Plaintiff's inability to establish actual injury, we further recommend that he be awarded nominal damages in the amount of one dollar; and

2. **DENIED** in all other respects; and it is further

**RECOMMENDED,** that Defendants Cross–Motion for Summary Judgment (Dkt. No. 42) be **GRANTED** in part and **DENIED** in part as follows:

1. **DENIED** with respect to Plaintiff's due process claim against Defendant Uhler for his failure to provide Plaintiff with a copy of his hearing disposition from the third disciplinary hearing; and

2. **GRANTED,** with respect to all of Plaintiff's other claims, which should be **DISMISSED;** and it is further

**ORDERED,** that the Clerk of the Court **TERMINATE** Sgt. Gower from this action; [17] and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

Date: August 14, 2014.

Footnotes

1   We agree. In the instant case, Plaintiff has alleged that he spent a total of 910 consecutive days in SHU as a result of the three disciplinary hearings at issue. Dkt. No. 39–2, Pl.'s Mem. of Law, dated Nov. 8, 2013, at p. 2. The Second Circuit has held that "[o]verlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether

a liberty interest was violated." *Reynoso v. Selsky,* 292 F. App'x 120, 122 (2d Cir.2008) (citing *Sims v. Artuz,* 230 F.3d 14, 23–24 (2d Cir.2000)); *see also Koehl v. Bernstein,* 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (citing *Sealey v. Gitner,* 197 F.3d 578 (2d Cir.1999), for the proposition that "the Second Circuit suggested that consecutive sentences resulting from separate hearings adjudicating different misbehavior reports should be aggregated for the purpose of determining whether the confinement constitutes atypicality.").

2    A transcript of the September 7–13 disciplinary hearing was not provided to the Court as part of his disciplinary record.

3    In addition to time in SHU, Plaintiff also lost several months of good time credits as a result of his disciplinary hearings. *See* 1st Hr'g Tr. at p. 1; Haug Decl., Ex. A, Disciplinary Hr'g Report; 3rd Hr'g Tr. at p. 1. Ordinarily, a prisoner cannot seek monetary damages for a due process violation arising out of a prison disciplinary hearing where the loss of good time credits affects the overall length of the plaintiff's sentence without first seeking a reversal or expungement of the disciplinary conviction. *See Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994)) (holding "that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."). However, in the instant case, Plaintiff is serving a life sentence, and accordingly, the loss of good time credits neither affects the overall length of his sentence nor prevents him from filing the instant action. *See* New York State Inmate Lookup for Inmate DIN # 96–A–0837, Leonard Hinton, http://nysdoccslookup.doccsny.gov (last checked July 31, 2014); *see also Holmes v. Grant,* 2006 WL 851753, at *18 (S.D .N.Y. Mar. 31, 2006) (surveying cases in support of the proposition that *"Heck [v. Humphrey]* does not apply [w]here, ... plaintiff is serving a life sentence, [because] the loss of good time credits ... has no effect on the length of his sentence"); N.Y. CORR. LAWW § 803(1)(a) (noting that inmates serving a maximum life sentence are not eligible for reduced sentence based on good behavior).

4    Sgt. Gower was dismissed from this action by the Honorable Lawrence E. Kahn, Senior United States District Judge, during the Court's initial review on March 7, 2013. *See* Dkt. No. 4, Dec. & Order, dated Mar. 7, 2013, at p. 5. Nonetheless, Sgt. Gower was served with process and joined in Defendants' Answer. *See* Dkt. Nos. 7 & 23. In light of his earlier dismissal and notwithstanding the subsequent errors which occurred, the Clerk of the Court is ordered to terminate Sgt. Gower from this action.

5    Document Number 42–1 is listed as Plaintiff's Affidavit. However, this document contains both sworn statements and legal arguments, in non-sequentially numbered paragraphs. Accordingly, we make reference to the page numbers assigned by Plaintiff.

6    In his Article 78 proceeding, Plaintiff challenged the sufficiency of the notice on the grounds that it omitted the specific dates of the events in question. *See generally* Pl.'s App., Sec. I, Ex. H. While it does not appear that Plaintiff intended to re-raise that issue here, to the extent that he may have intended to do so, such an argument would be unavailing. Although the date of the misbehavior report was actually the date Sgt. Gower conducted his investigation rather than the date that the actual events giving rise to the report occurred, this omission was by no means fatal given the specific nature of the charges against Plaintiff. Indeed, it is clear that Plaintiff was able to understand the nature of the charges against him and to prepare a defense. *See id.*(finding that "the report provided adequate detail to apprise [Plaintiff] of the charges and afford him the opportunity to prepare his defense") (internal quotations and citation omitted); *see also Sira v. Morton,* 380 F.3d at 71 (citing *Quinones v. Ricks,* 288 A.D.2d 568, 568–69 (N.Y.App. Div.2d Dep't 2001), for the proposition that "failure to include specific date in misbehavior report may be excused if the report otherwise provides sufficient details to permit the inmate to fashion a defense"); *Cepeda v. Urban,* 2014 WL 2587746, at *6 (W .D.N.Y. June 10, 2014) (reaching similar conclusion).

7    Indeed, the New York State Appellate Division, Fourth Department, held that the evidence adduced at Plaintiff's disciplinary hearing was sufficiently adequate to meet the "substantial evidence" standard; a burden which is much higher than the "some evidence" standard applicable to the instant action. *See* Pl.'s App., Sec. I, Exs. H, Dec. & Order, dated Oct. 26, 2011; & I, Order, dated Nov. 9, 2012; *Smith v. Fischer,* 2010 WL 145292, at *9 (N.D.N.Y. Jan. 11, 2010) (citing *Sira v. Morton,* 380 F.3d at 76 n. 9, for the proposition that the substantial evidence " "requirement is sterner than the 'some evidence' standard necessary to afford due process" ").

8    It is also worth noting that it is not entirely clear that Inmate Veach's refusal to testify was actually a recantation of his earlier statements to Sgt. Gower. Inmate Veach stated in his refusal form that he knew nothing about any incident which occurred on July 25, 2010. Pl.'s App., Sec. I, Ex. C, Inmate Refusal Form, dated Oct. 8, 2010. However, July 25, 2010 was the day that Sgt. Gower was informed about the alleged violations, not the dates that the alleged violations occurred. *See supra* Note 6. Thus, this statement is not necessarily at odds with Veach's earlier statements to Sgt. Gower.

9    Neither Sergeant Betti nor Corrections Officer Ruggerio are Defendants in this action.

10    These individuals are not Defendants in the instant action.

11    It is clear from Plaintiff's Opposition to Defendant's Cross–Motion for Summary Judgment that Plaintiff was aware of Defendants' claim that he failed to identify how he was prejudiced by Defendant Haug's failure to call these witnesses. *See* Pl.'s Opp'n at pp. 6–7.

However, rather than explain how he was prejudiced, Plaintiff argued that the Article 78 determination constituted "law of the case" and that Defendants' reliance on the harmless error standard was misplaced. *Id.*

12    On July 18, 2014, we stayed the parties pending Cross–Motions for Summary Judgment and ordered them to brief the Court as to whether Judge Feldstein's prior conclusion in Plaintiff's Article 78 action, that Plaintiff was properly excluded from his disciplinary hearing based on his failure to conform to facility security protocols, precluded him from arguing in the instant case that he was unlawfully excluded from attending the third disciplinary hearing. Dkt. No. 54, Order, dated July 18, 2014. In his Reply to the Defendants' Letter–Brief, Plaintiff conceded that Judge Feldstein's determination in this regard does preclude him from re-raising this issue in the instant matter. *See* Dkt. Nos. 55, Defs.' Lt.-Br., dated July 21, 2014, & 56, Pl.'s Reply Lt.-Br., dated July 25, 2014.

13    Moreover, even if the issue were not precluded, it is unlikely that Plaintiff's claim would have succeeded because Plaintiff fails to allege any resulting prejudice from this alleged error. *See Lunney v. Brureton,* 2007 WL 1544629, at *28 (S.D.N.Y. May 29, 2007) (citing *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991) for the proposition that "[p]rison disciplinary hearings are subject to a harmless error analysis."). Indeed, Plaintiff fails to allege that had he been offered the opportunity, he would have presented evidence or called witnesses on his own behalf, let alone that such evidence would have been likely to affect the outcome of his disciplinary determination.

14    Defendants fail to adequately contest Plaintiff's contention that he was not served a written copy of the determination; indeed, with the exception of their unsupported statement that they "[d]eny information and belief about when plaintiff received a copy of the hearing determination," they fail to address the issue whatsoever. *See* Dkt. No. 42–1, Defs.' Reply to Pl.'s 7.1 Statement, at ¶ 35; *see also Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991) (finding that mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment).

15    Plaintiff also claims that he initially appealed his disciplinary determination on February 3, 2011, the day that it was imposed. Compl. at p. 6. However, he provides conflicting and wholly inadequate explanations for the type and content of the notice he received. *See id.* at p. 8 n. 3; *see also* Pl.'s Opp'n at Ex. A, Hinton Aff. And, although it is unclear what the bases of Plaintiff's February 3 appeal were, it is axiomatic that Plaintiff would have known at that time that he was excluded from the hearing and had not received proper notice, and accordingly, the lack of notice did not prevent him from raising either of these grounds at that time. Moreover, as a result of this appeal, Plaintiff's disciplinary determination was modified, and his sentence was reduced from thirty-six months SHU to eighteen months. Pl.'s Mem. of Law at p. 26; Uhler Decl. at Ex. B, Review of Sup't Hr'g, dated Mar. 29, 2011.

16    To be sure, we are not positing that the relief Plaintiff received from his Article 78 action somehow extinguished any due process violation that he may have suffered between the time that violation accrued, and the time the Article 78 Petition was granted in his favor. Rather, we are merely noting the fact that Plaintiff was unable to file a successful administrative grievance appeal at the prison once he was provided with a copy of the formal notice as evidence that nothing within the notice provided Plaintiff with a meritorious ground for appeal. Therefore, the fact that he did not receive the formal notice sooner did not prejudice him. *Compare Bogle v. Murphy,* 2003 WL 22384792, at *5 (W.D.N.Y. Sept. 9, 2003) (noting that once a due process violation accrues, a subsequent Article 78 determination in the plaintiff's favor does not rectify the harm caused); *with Lunney v. Brureton,* 2007 WL 1544629, at *27–29 (dismissing due process claim based on undisputed failure to provide timely written disposition to plaintiff, in part on the basis that after receiving a transcript of the hearing, which included a statement of the evidence relied upon, Plaintiff failed to add any new substantive arguments).

17    *See supra* Note 4.

---

**End of Document**                                          © 2014 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext© 2014 Thomson Reuters. No claim to original U.S. Government Works.    16