**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MELVIN KIMBROUGH,**

                                    **Plaintiff,**


                  **v.**                                    **9:13-CV-100**
                                                            **(FJS/TWD)**

**BRIAN FISCHER, Commissioner of NYS**
**DOCCS; ALBERT PRACK, Acting Director**
**of S.H.U., DOCCS; T. FAUSS, Educational**
**Supervisor, C.H.O., Mohawk Correctional**
**Facility; ABATE, Lieutenant/Watch Commander,**
**Auburn Correctional Facility; J. HAI,**
**Correctional Officer, C.I.U., Auburn Correctional**
**Facility; and MCCARTHY, Captain, Acting Deputy**
**Superintendent of Security, Auburn Correctional**
**Facility,**

                                    **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**MELVIN KIMBROUGH**
**00-A-2134**
Attica Correctional
Box 149
Attica, New York 14011
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**                   **RACHEL M. KISH, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Pending before the Court are Magistrate Judge Dancks' September 29, 2014, and October 21, 2014 Report-Recommendations and Orders, *see* Dkt. Nos. 62, 65, and the parties' objections thereto, *see* Dkt. Nos. 66, 67, 68.

## II. BACKGROUND

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). At the times relevant to the claims in this action, Plaintiff was housed at Auburn Correctional Facility and Mohawk Correctional Facility.

In July 2003, Plaintiff was housed at Upstate Correctional Facility, where he ordered and received a pamphlet entitled "Black Nationalism," which officials at Upstate Correctional Facility allowed him to possess. One month later, he was transferred to Auburn Correctional Facility. On June 6, 2010, Plaintiff was informed that he would be transferred to a medium security facility. The next day, Plaintiff passed "an abundance of papers," which included Black Nationalist literature, to another inmate to discard. Defendant Hai confiscated the papers from the other inmate.

On June 8, 2010, Plaintiff arrived at Mohawk Correctional Facility and was immediately placed in solitary confinement without an explanation. On June 9, 2010, Plaintiff was issued a misbehavior report that charged him with violating Rule 105.13, Unauthorized Organizations; Rule 105.14, Unauthorized Organizational Activities; Rule 113.22, Possessing Prohibited Articles; and Rule 114.10, Smuggling.

On June 11, 2010, Defendant Fauss commenced a Tier III disciplinary hearing to address the charges contained in the misbehavior report. Defendant Faust adjourned the hearing to allow Plaintiff to receive assistance, a rule book, and his personal property, including receipts for the allegedly unauthorized literature. Plaintiff was provided with an outdated rule book and was unable to recover receipts for the literature. Plaintiff's legal assistant advised him to obtain a monthly statement from DOCCS Central Office.

Defendant Fauss reconvened the disciplinary hearing on June 14, 2010. Plaintiff pled not guilty to all of the charged violations and moved to dismiss the charges for violating Rule 105.13 and Rule 105.14 because those rules were not listed in the copy of the rule book that was provided to him. Plaintiff, Defendant Hai, and the inmate who received the literature from Plaintiff provided testimony. On June 12, 2010, Defendant Fauss found Plaintiff guilty of all rule violations and imposed sanctions of 120 days solitary confinement, 120 days loss of good time credits, and loss of phone, commissary, and package privileges.

Plaintiff appealed Defendant Fauss' determination; and, on July 20, 2010, Defendant Prack, Acting Director of Special Housing/Inmate Disciplinary Program, modified Defendant Fauss' decision and dismissed the Rule 105.13 charge. However, Defendant Prack did not reduce Plaintiff's sanctions.

Finally, Plaintiff alleges that, while he was housed in solitary confinement, he was locked in his cell twenty-four hours a day with the lights on throughout the night. Plaintiff contends that he had no privacy and was not allowed to participate in sports and social gatherings, attend religious services, or have contact visits. Plaintiff claims that he received only the bare minimum of personal property and food rations. Plaintiff was released from solitary confinement on April 21, 2012. On

January 28, 2013, he filed this action. *See* Dkt. No. 1.

## III. DISCUSSION

**A.      Procedural background**

On November 14, 2010, Plaintiff commenced a special proceeding in New York State Supreme Court pursuant to Article 78 of New York Civil Practice Law and Rules, which was subsequently transferred to the Appellate Division, Third Department.  On June 21, 2012, the Appellate Division reversed the Tier III disciplinary hearing decision and ordered DOCCS to expunge the disciplinary conviction, restore all of Plaintiff's privileges, and restore Plaintiff's good time credits.

On January 28, 2013, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against Defendants Brian Fischer, Albert Prack, T. Fauss, Timothy Abate, J. Hai and T. McCarthy.  In his complaint, Plaintiff asserted the following causes of action: (1) a First Amendment claim against Defendant Hai for confiscating his papers and issuing a misbehavior report and against Defendant Abate for failing to dismiss the misbehavior report; (2) a due process claim against Defendant Fauss for his conduct during the disciplinary hearing, against Defendant Prack for affirming the majority of the hearing results, and against Defendant Fischer for failing to reverse the disciplinary decision; (3) an equal protection claim against Defendants Hai, McCarthy, and Fauss; and (4) an Eighth Amendment claim against Defendants Hai, Abate, Fauss, Prack and Fischer.  Plaintiff requested declaratory and injunctive relief, compensatory damages, and punitive damages.

Defendants moved for summary judgment.  On September 29, 2014, Magistrate Judge Dancks issued a Report-Recommendation and Order, in which she recommended that this Court

grant Defendants' motion for summary judgment with regard to all of Plaintiff's claims except his

claims that Defendant Fauss and Defendant Prack violated his due process rights. Plaintiff then

moved for summary judgment. In a Report-Recommendation and Order dated October 21, 2014,

Magistrate Judge Dancks recommended that this Court grant Plaintiff's motion with regard to his

due process claims against Defendants Fauss and Prack and deny his motion with regard to his other

claims as moot.

Pending before the Court are the parties' objections to both of Magistrate Judge Dancks'

Report-Recommendation and Orders. *See* Dkt. Nos. 66, 67, 68.


**B.     The parties' objections to Magistrate Judge Dancks' Report-Recommendation and Orders**

*1. Parties' objections to Magistrate Judge Dancks' September 29, 2014 Report-Recommendation and Order*

Plaintiff filed objections to Magistrate Judge Dancks' September 29, 2014 Report-

Recommendation and Order. *See* Dkt. No. 67. First, Plaintiff argued that Magistrate Judge Dancks

erred in finding that Defendant Fischer was not personally involved in the alleged unconstitutional

incidents. *See id.* at 1-2. Second, Plaintiff objected to Magistrate Judge Dancks' finding that

Defendants were entitled to judgment in their favor on unexhausted claims. *See id.* at 3. Third,

Plaintiff objected to Magistrate Judge Dancks' recommendation that this Court grant Defendants'

motion for summary judgment with regard to his First Amendment confiscation claim against

Defendant Hai. *See id.* at 4-5. Finally, Plaintiff objected to Magistrate Judge Dancks'

recommendation that this Court grant Defendants' motion for summary judgment with regard to his

First Amendment claim against Defendant Abate.

Defendants also filed objections to Magistrate Judge Dancks' September 29, 2014 Report-Recommendation and Order.  First, Defendants argued that Magistrate Judge Dancks erred in denying their motion for summary judgment with regard to Plaintiff's due process claims.  *See* Dkt. No. 66 at 10.  Second, they argued that Defendants Fauss and Prack were entitled to qualified immunity because their actions were objectively reasonable in light of the record produced at Plaintiff's disciplinary hearing.  *See id.* at 11.

### 2. Parties' objections to Magistrate Judge Dancks' October 21, 2014 Report-Recommendation and Order

Plaintiff filed objections to Magistrate Judge Dancks' October 21, 2014 Report-Recommendation and Order.  *See* Dkt. No. 68.  First, Plaintiff objected to Magistrate Judge Dancks' recommendation that this Court find Plaintiff's motion for summary judgment with regard to his First Amendment, equal protection, and Eighth Amendment claims moot.  *See id.* at 1.  Second, Plaintiff objected to Magistrate Judge Dancks' finding that the Prison Litigation Reform Act ("PLRA") limited his relief, arguing that the Court could award him punitive damages under the PLRA.  *See id.* at 3.

Defendants also filed objections to Magistrate Judge Dancks' October 21, 2014 Report-Recommendation and Order.  *See* Dkt. No. 66.  Defendant argued that Magistrate Judge Dancks erred when she granted Plaintiff's motion for summary judgment because, contrary to established principles of summary judgment analysis, Magistrate Judge Dancks resolved a genuine dispute of material fact in Plaintiff's favor instead of affording Defendant Fauss the benefit of every reasonable inference.  *See id.* at 9.

**C.** **Standard of review**

*1. Review of a magistrate judge's report-recommendation*

In reviewing a magistrate judge's report-recommendation, the district court may accept, reject or modify the recommendations. *See* 28 U.S.C. § 636(b)(1). The court conducts a *de novo* review of the portions of the magistrate judge's recommendations to which a party objects. *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). If, however, a party fails to file specific objections, *de novo* review is not required. *See Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003). Nor is a court required to conduct a *de novo* review if the parties' objections repeat the arguments they made in their original pleadings. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (citations omitted). However, even if the parties file no objections, the court must ensure that the face of the record contains no clear error. *See Wilds*, 262 F. Supp. 2d at 169.

*2. Summary judgment standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine dispute as to a material fact to be decided with respect to any essential element of the claim at issue. *See id.*

at 250. Once the moving party meets its initial burden, the opposing party must show that there is a material issue of fact for trial. *See id.* Although *pro se* parties are entitled to special latitude when defending against summary judgment motions, they still must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

Finally, when deciding a motion for summary judgment, a court must resolve any ambiguities and draw all reasonable inferences from the facts in a light most favorable to the non-moving party. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted); *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is proper only where no reasonable trier of fact could rule in favor of the non-moving party. *See Bldg. Trades Emp'rs Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted).

### D. Claims against Defendant Fischer

"'[P]ersonal involvement of [a] defendant[] in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)) (other citations omitted). Thus, a prisoner's allegations that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy the violation after learning about" it or "exhibited deliberate indifference by failing to act on information indicating that the violation was occurring." *Simpson v. Town of Warwick Police Dep't*, No. 13 Civ. 2854, 2016 WL 452156, *6 (S.D.N.Y. Feb. 4, 2016) (citations omitted); *see also Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) (stating that "[t]he law is clear that allegations that an official ignored a prisoner's

letter are insufficient to establish liability" (citations omitted)).  Furthermore, a person in a supervisory capacity cannot be liable for damages under § 1983 solely by virtue of being a supervisor as there is no *respondeat superior* liability under § 1983.  *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quotation omitted); *Wright*, 21 F.3d at 501 (citation omitted).  Finally, vague or conclusory allegations that a supervisor has failed properly to monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.  *See Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009).

In *Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant could be personally involved in a constitutional deprivation.  A plaintiff can establish culpability on the part of a supervisory official for a civil rights violation in one of several ways, including when the individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring.  *See id.* at 323-24 (citations omitted).

In this case, Plaintiff alleged a due process claim against Defendant Fischer for failing to reverse the disciplinary decision of the Tier III hearing.  Plaintiff did not allege that Defendant Fischer directly participated in the challenged conduct.  *See* Dkt. No. 67 at 3.  Instead, Plaintiff asserted that, as Commissioner, Defendant Fischer had a duty to investigate prisoner allegations of his subordinates' unconstitutional conduct.  *See id.*

Plaintiff's complaint does not include any facts that relate to Defendant Fischer.

Furthermore, in his objections to Magistrate Judge Dancks' September 29, 2014 Report-Recommendation and Order, Plaintiff did not identify any facts to support a claim that Defendant Fischer either knew, or should have known, of the events about which Plaintiff complained. Therefore, there is no basis for Plaintiff's allegation that Defendant Fischer failed to remedy any violation after learning about it.

Furthermore, Plaintiff has not introduced any facts to support a finding that Defendant Fischer either created or allowed a policy or custom under which the violation occurred; had been grossly negligent in managing subordinates who caused the violation; or exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. The bare fact that Defendant Fischer occupied a high position in DOCCS is insufficient to sustain a claim against him. *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) (citations omitted).

For all these reasons, the Court accepts Magistrate Judge Dancks' recommendation and grants Defendants' motion for summary judgment with regard to all of Plaintiff's claims against Defendant Fischer.

**E.      Plaintiff's unexhausted claims**

The PLRA imposes several restrictions on the ability of prisoners to maintain federal civil rights actions. Within the PLRA is an exhaustion of remedies provision, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v.*

*Ngo*, 548 U.S. 81, 85 (2006) (citation omitted); *Hargrove v. Riley*, No. CV-04-4587, 2007 WL 389003, *5-*6 (E.D.N.Y. Jan. 31, 2007) (citations omitted).  The PLRA's exhaustion requirement applies to all inmate suits that concern prison life, whether they involve general circumstances or specific episodes, and regardless of the type of wrong they allege.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citations omitted).

New York prison inmates are subject to DOCCS' Inmate Grievance Program ("IGP"), which courts recognize as an "available" remedy under the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2003); *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir. 1999)).  The IGP consists of a three-step review process.  First, the inmate submits a written grievance to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the events at issue.  *See* 7 N.Y.C.R.R. § 701.5(a).  Then the IGRC issues a determination regarding the grievance.  *See* 7 N.Y.C.R.R. § 701.5(b).  If the inmate files an appeal from an adverse decision, the superintendent of the facility reviews the IGRC's determination and issues a decision.  *See* 7 N.Y.C.R.R. § 701.5(c).  The third step provides for the inmate to appeal a superintendent's adverse ruling to the Central Office Review Committee ("CORC"), which makes the final decision.  *See* 7 N.Y.C.R.R. § 701.5(d).  Ordinarily, only upon exhaustion of this review process may a prisoner seek relief pursuant to § 1983 in federal court.  *See Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002).

In this case, CORC only ruled on the issue of whether Plaintiff's punishment should have been reduced when the Rule 105.13 charge was dismissed.  The CORC did not, however, rule on Plaintiff's First Amendment, equal protection and Eighth Amendment claims.  *See id.*  Therefore, Plaintiff did not exhaust all available remedies through the IGP.  A finding of failure to exhaust,

however, does not end the review. Rather, the Second Circuit has deemed that a three-part inquiry is appropriate when a prisoner has failed to exhaust his administrative remedies. *See id.* In this case, the third part of the inquiry was not met because there were "special circumstances" that justified Plaintiff's failure to comply with the administrative procedural requirements. Specifically, the prison officials rejected Plaintiff's grievance, advised him that some of the issues underlying his disciplinary convictions were "non-grievable," and instructed him to pursue his issues in the courts.

Under these circumstances, the Court finds that Plaintiff has, at the very least, raised an issue of fact that his failure to exhaust his administrative remedies was justified. Therefore, the Court accepts Magistrate Judge Dancks' recommendation and denies Defendants' motion for summary judgment on this ground.

## F.  Plaintiff's First Amendment confiscation and retaliation claims

The three-step analysis that the Supreme Court enumerated in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), governs prison restrictions on inmates' receipt and possession of publications. *See Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989); *Allen v. Coughlin*, 64 F.3d 77, 79-80 (2d Cir. 1995) (quotation omitted). First, courts ask "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective." *Thornburgh*, 490 U.S. at 414. Second, courts look to see "'whether there are alternative means of exercising the right that remain open to prison inmates.'" *Id.* at 417 (quotation omitted). Third, courts examine "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Id.* at 418 (citation omitted).

In the prison context, preservation of security and discipline constitutes a legitimate

penological interest. *See Giano v. Senkowski*, 54 F.3d 1050, 1054 (2d Cir. 1995) (citation omitted).

A governmental objective must be "legitimate" and "neutral." *Thornburgh*, 490 U.S. at 414.

Conduct expressly aimed at protecting prison security is "legitimate" beyond question and is in fact

"central to all other correctional goals." *Id.* at 415 (quoting *Pell v. Procunier*, 417 U.S., at 823, 94

S. Ct., at 2804). As for neutrality, "[w]here . . . prison administrators draw distinctions between

publications solely on the basis of their potential implications for prison security, the regulations are

'neutral' in the technical sense . . . ." *Id.* at 415-16 (footnote omitted). Furthermore, "[w]here the

regulations at issue concern . . . [publications in] prison, . . . a regulation which gives prison

authorities broad discretion is appropriate." *Id.* at 416. It is therefore rational to censor any

materials found "to create an intolerable risk of disorder under the conditions of a particular prison

at a particular time." *Id.* at 417 (footnote omitted).

In this case, Defendant Hai's confiscation of the materials was validly and rationally

connected to the legitimate governmental objective of maintaining order in the facility. Defendant

Hai reported that, to his eye, the materials "appear[ed] to advocate civil disobedience inside

prisons." *See* Dkt. No. 47-6 at ¶ 11. Furthermore, Defendant Hai only confiscated the materials as

Plaintiff was being transferred; and, therefore, Plaintiff never informed him that he had allegedly

been given permission to possess the materials. Defendant Hai's conclusion was, therefore, rational

as he believed the publication created a risk of civil disobedience within the prison. For all these

reasons, the Court accepts Magistrate Judge Dancks' recommendation and grants Defendants'

motion for summary judgment with regard to Plaintiff's First Amendment confiscation claim.

With regard to Plaintiff's First Amendment retaliation claim, to sustain such a claim, a

prisoner must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2)

that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citations omitted).

Due to the relative ease with which a prisoner can allege a claim of retaliation, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has explained,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes*, 239 F.3d at 491 (citations omitted).

In this case, Plaintiff's allegations do not plausibly suggest that his conduct was protected. Plaintiff testified at his deposition that his intent in passing the materials to the other inmate was for the other inmate to discard the materials or retain the materials for himself. *See* Dkt. No. 47-1 at 8. Accordingly, the Court accepts Magistrate Judge Dancks' recommendation and grants Defendants' motion for summary judgment with regard to Plaintiff's First Amendment retaliation claim.

## G.     Due process claims against Defendants Fauss and Prack

Plaintiff alleges that Defendant Fauss violated his procedural due process rights when he failed to act as a fair and impartial hearing officer at Plaintiff's Tier III hearing. Plaintiff further

asserts that Defendant Prack violated his procedural due process rights when he affirmed the majority of Defendant Fauss' disciplinary hearing decision.

To state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *See Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989)). Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from a state statute or regulation. *See id.* (citation omitted). The Supreme Court has narrowly circumscribed the scope of liberty interests emanating from the Due Process Clause "to protect no more than the 'most basic liberty interests in prisoners.'" *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983)) (other citation omitted). However, when a prisoner is subjected to conditions that are "unexpected," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and "qualitatively different from the punishment characteristically suffered by a person convicted of [a] crime," the Due Process Clause itself confers a liberty interest, *Vitek v. Jones*, 445 U.S. 480, 493 (1980).

Furthermore, the Supreme Court held in *Sandin* that state-created liberty interests shall be limited to those deprivations that subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, a prisoner asserting a denial of due process as a result of segregated confinement or loss of privileges must (1) make a threshold showing that an atypical and significant hardship was imposed on him and establish that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

Although the Second Circuit has noted that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999), it has made clear that excessive confinement in a separated housing unit deserves due process protections, *see Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000). In addition to duration, a court may also consider the conditions of confinement in determining whether confinement rises to a severe hardship. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quotation omitted). Furthermore, the Second Circuit has stated that, "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prisons conditions is required." *Id.* at 64-65 (quoting *Colon*, 215 F.3d at 232) (other citation omitted); *see also Sims*, 230 F.3d at 23 (noting that segregated sentences of 125-288 days are "relatively long" and therefore necessitate "'specific articulation of . . . factual findings' before the district court could properly term the confinement atypical or insignificant" (quotation and other citations omitted)). Accordingly, the court must "'make a fact-intensive inquiry'" that examines "'the actual conditions of SHU confinement.'" *Palmer*, 364 F.3d at 65 (quotations omitted). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *See id.* (citations omitted). If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin*. *See id.* (quotation and other citations omitted).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration

-16-

of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, No. 96-CV-44, 1998 WL 167297, *5 (N.D.N.Y.) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)), *aff'd' in part, vacated in part on other grounds*, 166 F.3d 1201 (2d Cir. 1998); *see also Palmer*, 364 F.3d at 64 (stating that, in assessing what constitutes an atypical and significant hardship, "'[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical'" (quotation omitted)). Once a plaintiff makes a threshold showing of atypical and significant confinement, the court should determine whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

With regard to a disciplinary hearing, due process is satisfied if (1) "the inmate receive[s] at least twenty-four hours written notice of the disciplinary charges against him;" (2) "the inmate [is] permitted to call witnesses and present evidence 'when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals;'" (3) "the inmate [is] judged by a fair and impartial hearing officer;" (4) "the disciplinary conviction [is] supported by some evidence;" and (5) "the inmate [is] provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken." *Mohamed v. Powers*, No. 9:14-CV-1389, 2015 WL 8492472, *4 (N.D.N.Y. Dec. 10, 2015) (citation omitted).

### 1. Liberty interest

Defendants concede, for purposes of this motion, that the penalty imposed against Plaintiff implicates a liberty interest. *See* Dkt. No. 62 at 18. Accordingly, the Court need only determine

whether Plaintiff was deprived of any of the minimum requirements of due process during the disciplinary hearing and subsequent appeal of the hearing officer's decision.

### 2. Fair and impartial hearing officer, Defendant Fauss

Plaintiff does not challenge the sufficiency of the written notice he received, allege that he was not given a reasonable opportunity to call witnesses and present evidence, or challenge the sufficiency of the written statement of the disposition. Plaintiff alleges only that Defendant Fauss was not a fair and impartial hearing officer.

"It is well settled that the degree of impartiality required of prison hearing officials does not rise to the level of that required by judges generally.'" *Espinal v. Goord*, 180 F. Supp. 2d 532, 539 (S.D.N.Y. 2002) (quoting *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)). Due process in this context requires only that the hearing officer's decision not be arbitrary. *Id.* (quoting *Wolff*, 418 U.S. at 571, 94 S. Ct. 2963). A decision is not "arbitrary" if it is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "This standard is extremely tolerant and is satisfied 'if there is *any* evidence in the record that supports' the disciplinary ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). "[O]nly 'reliable' evidence can constitute 'some evidence.'" *Id.* at 76 (quoting *Luna v. Pico*, 356 F.3d at 488).

In this case, Defendant Fauss' hearing determination that Plaintiff violated Rule 105.13 was not supported by some evidence. This rules provides, in pertinent part, that

> an inmate shall not engage in or encourage others to engage in gang activities or meetings, or display, wear, possess, distribute, or use gang insignia or materials including, but not limited to printed or

> handwritten gang or gang related material . . . . For purposes of this
> rule, printed or handwritten gang or gang related material is written
> material that, if observed in the inmate's possession, could result in an
> inference being drawn about the inmate's gang affiliation, but
> excludes published material that the inmate has obtained through the
> facility library or that has been approved for the inmate to possess
> through the media review process.

7 N.Y.C.R.R. § 270.2.

There was no evidence presented at the disciplinary hearing that Plaintiff distributed gang

materials.  At that hearing, Plaintiff testified that the literature had been media reviewed, permitted,

and delivered to him at Upstate Correctional.  Although Plaintiff asked his assigned assistant to

obtain copies of the disbursement receipts from the prison business office records, the assistant was

unsuccessful because the facility records only went back three years.  The hearing continued with

testimony from the inmate to whom Plaintiff handed the materials and from Defendant Hai.

However, neither of them testified as to how Plaintiff came into possession of the literature.

Significantly, the documents that Plaintiff possessed did not refer to any particular organization, nor

did they advocate violence or acts of disobedience.  Additionally, no evidence was presented in the

misbehavior report, hearing testimony, or elsewhere to sustain the remaining charges on a basis

independent of a finding that the materials Plaintiff possessed were unauthorized.

Finally, although Defendant Prack subsequently reversed Defendant Fauss' guilty finding,

this reversal does not protect Defendant Fauss from liability.  It is well-established in the Second

Circuit that subsequent administrative reversals do not cure procedural defects in disciplinary

hearings.  *See Walker v. Bates*, 23 F.3d 652, 657 (2d Cir. 1994).

For all these reasons, the Court finds that there was no reliable evidence to support

Defendant Fauss' finding that Plaintiff was guilty of violating Rule 105.13.  Therefore, the Court

accepts Magistrate Judge Dancks' recommendation and grants Plaintiff's motion for summary judgment with regard to his due process claim against Defendant Fauss.

### 3. Due process claim against Defendant Prack

Plaintiff alleges that Defendant Prack was liable in his supervisory capacity for Defendant Fauss' alleged due process violation because he knew of but failed to remedy the violation when he affirmed the majority of Defendant Fauss' disciplinary determination. *See* Dkt. No. 65 at 12.

Although district courts are split in the Second Circuit on the issue of whether simply affirming an allegedly unconstitutional disciplinary decision will implicate the requisite personal involvement for § 1983 liability, some district courts have found personal involvement where a supervisory official affirms an allegedly infirm hearing. *See Thomas v. Calero*, 824 F. Supp. 2d 488, 509-10 (S.D.N.Y. 2011). These courts find that there is an "ongoing" violation because having the power to vacate an allegedly unconstitutional decision, in refusing to do so, and allowing an inmate to remain in the Special Housing Unit knowingly "continu[es] a deprivation of liberty without due process of law." *Delgado v. Bexio*, No. 09 Civ. 6899, 2011 WL 1842294, *9 (S.D.N.Y. May 9, 2011).

Furthermore, some courts have distinguished between simply affirming the denial of a grievance and "'review[ing] and respond[ing] to a prisoner's complaint,'" finding personal involvement only in the latter case. *Pugh v. Goord*, 571 F. Supp. 2d 477, 515 (S.D.N.Y. 2008) (quotation and other citations omitted). Others have drawn a distinction between a pro forma denial of a grievance and a "'detailed and specific'" response to a grievance's allegations. *Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006) (quotation and other citations omitted).

Many courts in the Second Circuit have held that an alleged constitutional violation complained of in a grievance must be "ongoing" in order to find personal involvement, such that the "supervisory official who reviews the grievance can remedy [it] directly." *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (citation omitted).

In this case, Defendant Prack, who was the Acting Director of Special Housing/Inmate Disciplinary Program, modified Defendant Fauss' decision by dismissing the Rule 105.13 charge. *See* Dkt. No. 1 at 8. However, Defendant Prack affirmed the other sanctions and did not reduce Plaintiff's solitary confinement time, loss of good time credits, or loss of privileges. Following Defendant Prack's determination, Plaintiff submitted a four-page grievance. *See* Dkt. No. 51-6 at 17-20. Plaintiff argued that his punishment should have been modified when Defendant Prack dismissed the Rule 105.13 charge. The Inmate Grievance Program responded to Plaintiff's complaint by advising him that the issues were non-grievable. Plaintiff subsequently filed a second grievance requesting that all penalties imposed for the guilty finding for violation of Rule 105.13 be lifted. The Superintendent denied modification of the penalties.

In this case, Plaintiff's appeal of Defendant Fauss' decision to Defendant Prack and his subsequent two grievances complained of "ongoing" violations that Defendant Prack could have remedied. Plaintiff's first grievance, which he filed on August 16, 2010, requested punishment modification, specifically removal from special housing. The request for modification refers to an ongoing harm that Defendant Prack could have remedied by removing Plaintiff from the Special Housing Unit. Plaintiff's second grievance, which he filed on August 17, 2010, requested similar relief and also requested that all penalties, including the 120 days' solitary confinement, 120 days loss of good time credits, and loss of phone, commissary and package privileges be lifted with

respect to the Rule 165.13 be dismissed.  Since these requests referred to remedies for an ongoing

violation of constitutional rights, the Court finds that Defendant Prack was personally involved in

the violation of Plaintiff's constitutional rights.  Accordingly, the Court accepts Magistrate Judge

Dancks' recommendation and grants Plaintiff's motion for summary judgment with regard to his due

process claim against Defendant Prack.


**H.     Qualified immunity**

Defendants assert that Defendant Fauss and Defendant Prack are entitled to qualified

immunity because their actions were objectively reasonable in light of the record produced at

Plaintiff's disciplinary hearing.

The doctrine of qualified immunity shields public officials from suit for conduct they

undertake in the course of their duties if it "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982) (citations omitted).  Whether an official protected by qualified immunity may

be liable for an alleged unlawful action turns on the objective legal reasonableness of the action

assessed in light of the legal rules that were clearly established at the time he took the action.  *See*

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir.

1999) (quotation and other citation omitted).  Until recently, courts faced with qualified immunity

defenses have applied the procedure that the Supreme Court set out in *Saucier v. Katz*, 533 U.S.

194, 194 (2001).  Under this two-pronged approach, a court must first decide whether the facts

alleged make out a violation of a constitutional right.  If the allegations do so, the court must then

decide whether the right at issue was "clearly established" at the time of the alleged misconduct.

*See id.* Recently, the Supreme Court has softened the rigid approach enunciated in *Saucier. See Pearson v. Callahan*, 555 U.S. 223 (2009). Under *Pearson*, the court may address the two *Saucier* prongs in any order. *See id.* at 236.

To determine whether a right was clearly established for purposes of qualified immunity, courts must consider "whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his actions were unlawful." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995) (citation omitted).

A defendant is entitled to summary judgment on qualified immunity grounds if the court finds that the rights that the plaintiff asserts were not clearly established or that

> "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[] to believe that he was acting in a fashion that did not clearly violate an established federally protected right."

*Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (quoting *Robison*, 821 F.2d at 921 (quoting *Halperin v. Kissinger*, 807 F.2d 180, 189 (D.C. Cir. 1986))).

With respect to Plaintiff's due process claims against Defendants Fauss and Prack, an inmate has an established right to due process when facing disciplinary charges. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). In this case, a rational juror could conclude that it was not objectively reasonable for Defendant Fauss to find Plaintiff distributing gang materials where no evidence was presented at the disciplinary hearing that Plaintiff did so. Although Defendant Prack dismissed the Rule 105.13 charge, he affirmed the other sanctions and did not reduce Plaintiff's solitary confinement time, loss of good time credits, or his loss of privileges. As Defendant Prack had the

power to vacate the allegedly unconstitutional decision and, in refusing to do so, allowed Plaintiff to remain in the Special Housing Unit, a rational juror could conclude that Defendant Prack knowingly continued a deprivation of liberty without due process of law. Accordingly, the Court finds that Defendants Fauss and Prack are not entitled to qualified immunity with respect to Plaintiff's due process claims and denies Defendants' motion for summary judgment on this ground.

**I.     PLRA and Plaintiff's claims for relief**

Section 1997e(e) of Title 42 of the United States Code provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." 42 U.S.C. § 1997e(e). The Second Circuit has held that § 1997e(e) applies to all federal civil actions, including those based on claims alleging constitutional violations. *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002). Furthermore, the Second Circuit has held that "to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than a mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury." *McCann v. Coughlin*, 698 F.2d 112, 126 (2d Cir. 1983) (citations omitted). Thus, "[a]bsent a showing of causation and actual injury, a plaintiff is entitled only to nominal damages." *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993) (citations omitted).

Although § 1997e(e) "is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory

-24-

relief." *Thompson*, 284 F.3d at 416. Provided that a plaintiff can demonstrate actual injury, § 1997e(e) permits compensatory damages for the loss of the plaintiff's property. *See id.* at 418 (citing *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999) (indicating in *dicta* that suit for damages resulting from prison officials' seizure of inmate's property without due process should not be dismissed merely because inmate alleges emotional suffering from the same incident)).

In this case, Plaintiff alleges no physical injuries as a result of the due process violation. *See* Dkt. No. 68 at 3. In her Report-Recommendation and Order, Magistrate Judge Dancks recommended that, if the Court adopted her recommendation, it should allow the parties an opportunity to brief the issue of the appropriate relief and the best method for determining that relief.

Although the PLRA may limit Plaintiff's relief to some extent, he may still be entitled to nominal damages, punitive damages, and/or injunctive or declaratory relief with regard to his due process claims against Defendants Fauss and Prack. Furthermore, it is unclear whether Plaintiff's $200,000 request for compensatory damages reflects any portion of damages for actual injury, such as the loss of prison job wages or the value of his property. Accordingly, the Court accepts Magistrate Judge Dancks' recommendation and will require the parties to file memoranda of law addressing the issue of the appropriate relief and the best method for determining that relief.

## IV. CONCLUSION

After reviewing the entire file in this matter, Magistrate Judge Dancks' September 29, 2014 Report-Recommendation and Order and her October 21, 2014 Report-Recommendation and Order, and the parties' objections thereto, as well as the applicable law, and for the above-stated reasons,

the Court hereby

**ORDERS** that Magistrate Judge Dancks' September 29, 2014 Report-Recommendation and Order is **ACCEPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Magistrate Judge Dancks' October 21, 2014 Report-Recommendation and Order is **ACCEPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 47, is **GRANTED** with respect to Plaintiff's (1) First Amendment claims against Defendants Hai and Abate; (2) equal protection claims against Defendants Hai, McCarthy, and Fauss; and (3) Eighth Amendment claims against Defendants Hai, Abate, Fauss, Prack and Fischer; and is **DENIED** in all other respects; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment, *see* Dkt. No. 49, is **GRANTED** with respect to his due process claims against Defendants Fauss and Prack and is **DENIED** with regard to his other claims as moot; and the Court further

**ORDERS** that, on or before **March 17, 2016**, each party shall file a memorandum of law, **not to exceed ten (10) pages**, addressing the issue of the appropriate relief that Plaintiff could receive on his due process claims against Defendants Fauss and Prack under the PLRA and the best method for determining that relief; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order, as well as copies of the unpublished cases that the Court has cited herein, on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 18, 2016
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge